CITED in State v. Gardner, 5 Vr. 330.

---

AUGUSTE MOULIN v. THE TRENTON MUTUAL LIFE AND FIRE INSURANCE COMPANY.

1. The record of a judgment in another state, when certified according to the act of Congress, has the same force and effect as it would have in the state where it was rendered; but this is only in case where the defendant against whom it was offered was brought into court, either by service of process within its jurisdiction or by an appearance to the action.

2. A corporation chartered by a state which confines its business within such state cannot be sued in a state where it has not established any office or transacted any business by serving process on its president or other officer when accidentally present in such state. Such officer does not represent the corporation or carry with him his official character into the state where the corporation had done no business nor established any office; but when they send their officers and agents into another state, and establish business there, corporations are liable to be brought in the courts of such state by serving of process upon their officers in such state.

3. In a suit on a judgment obtained in another state, it is not a good plea by a domestic corporation to allege that process was not served on any one authorized to act for them in the suit, for they may have had an office and transacted business in such foreign state, and made the contract there, and the process may have been served on their president or other officer while in such state.

The declaration in this case was in debt, upon a foreign judgment obtained by the plaintiff against the defendants in the Supreme Court of the state of New York, in Erie county, on the eighth day of May, eighteen hundred and fifty-two, for fifteen hundred and forty-six dollars *claim*, and nine dollars costs.

To this declaration the defendants pleaded two pleas.

*First.* "That at the commencement of said suit they were not residents or citizens of the state of New York, or existing as a corporate body under and by virtue of its laws, and that no process or other legal notice of said suit on which said judgment is alleged to have been obtained has been served upon them, or any one duly authorized on their behalf, or upon any property to them belonging, and that said defendants, or any one in their behalf, did not appear, plead, or make defence against said suit, by reason whereof said court never had or obtained jurisdiction thereof," &c.

*Second.* "That at and before the commencement of said suit in which such judgment is alleged to have been obtained, the defendants were not residents or citizens of the state of New York, or existing as a corporation under and by virtue of its laws, nor had they any office or place of business within said state, and were not within the jurisdiction of said state; that the said defendants were a corporate body under and by virtue of the laws of New Jersey, where its president and officers resided and were citizens; that Joseph C. Potts, who was and is the president of said company in New Jersey, being

accidentally in the city of New York, process in said suit was then and there served upon him; and that said defendants were not then and there within the jurisdiction of said court or said state, either at that time or at any time thereafter, during or at the time of said trial; and that the said defendants, or any one in their behalf, did not appear or make defence against said suit, by reason whereof said court never had or obtained jurisdiction thereof," &c.

To each of these pleas the plaintiff filed a general demurrer and defendants a joinder.

This case was submitted on brief to the CHIEF JUSTICE and Justice ELMER, by Mr. *Zabriskie*, for plaintiff, and Mr. *Dayton*, for defendant.

Mr. *Zabriskie*.

The whole point in the case is, whether a *foreign corporation* can be sued in any state where it has *no office*, or where its officers *do not reside*, under any circumstances or by virtue of any law where sued.

In New York, (*Code*, § 134 and 427,) a foreign corporation may be sued by delivering a copy of summons to president, cashier, &c.; but such a service can be on a foreign corporation only when it has property in this state, or the cause of action arose therein.

A state can make such a law, and such process and service in its *own courts would be legal.* If this law does not judicially appear, its effect appears in the presumption arising from the judgment that the defendants were in court according to the laws of New York.

The true question then is, can one state give its courts jurisdiction over *a corporation* which is created by the laws of another state, and whose place of business is without that state.

I. The *existence* of a foreign corporation is always recognised in other states; they *can sue* and be sued out of their own state: innumerable cases prove this; the question is at rest. 3 *Harr.* 158, *Bennington Iron Co.* v. *Rutherford; Story's Conflict of Laws* § 565.

Then a body corporate created by the laws of one state has a *corporate existence* in another state.

It need not *reside there*, or become *a citizen* of such foreign state, to have such existence. It is enough if its officers go there, and act in its name.

II. The location of a corporation, which is an imaginary being, a nonentity as regards substance, is no where. Its legal location depends upon its place of business, the location of its property or of its offices.

1. The place of business is *not the corporation*. A New Bedford whaling company does its business in the Pacific. It has no banking house or place of business at New Bedford; yet if its head officers reside there they may be sued there.

2. Its *property* does not locate a corporation. The Delaware and Raritan Canal Company are not located at New Haven because they send their propellers and have a *coal yard* there. This property can be attached there, but it is because the corporation does *not reside* there, not because it does.

3. The presence of the head officers of a corporation in any place gives it location.

A corporation is composed not of *its property or its office* or *place of business*, but *of its members*.

It is a creature of the law, but not a mere abstraction.

It is an *artificial person*, composed and made up of *natural persons*. These *persons are members* wherever they go. Joseph C. Potts was president of this corporation, at Trenton, at New Brunswick, at Jersey City, on the ferry, and he remained president in the city of New York; he did not *slip out* of his office on crossing the river, and then *slip back into it* by his return.

If all the officers and members were out of the state the corporation would not be dissolved nor their offices vacant. A policy signed by the president and secretary in *New York* would bind the company.

The New Jersey Railroad company does its business in New York—transfers and certificates of stock, &c. The officers of a company do, then, carry their *official capacity* with them into another state.

Has not, then, any court jurisdiction of a corporation that has the members or *component parts* of that corporation within its jurisdiction?

Does it make any difference if an officer *resides* in foreign jurisdiction or is *temporarily* there?

4. All agree that if the head officers *reside* in another state the corporation can be held in that foreign state. Now if the existence and location of the corporation is distinct from the locality of its members, what jurisdiction can be gained by the residence of *all* its members? If *he* does not carry his official capacity with him, on what legal principle is it? What book teaches that principle? What case settles it? If *residence* of officers gives jurisdiction, then their temporary presence does the same.

5. When a corporation is by its charter confined in its business to one county only, has its office there only, and all its officers living in it, its location or residence is in that county. Yet it is well settled that it can be sued by county court process or by justice's process in any county in the state where its officers are found accidentally passing. *Rev. Stat.* 248, § 76, and 947, § 1.

If the *presence of its officer* does not give the county court or justice jurisdiction, *what does?* He is the only part of the whole corporation there. The answer is, that he carries his official character with him.

The principle is exactly the same, no reasoning can make it different. If a *resident* of Hunterdon does not come into Mercer, Mercer courts have no jurisdiction.

6. All process may be served in most courts of civil or common law in two ways: 1, by service on the person, whereve. he may be; 2, by leaving it at *the residence*, and the party is summoned, whether he ever receives actual notice or not.

Now the service in the case of leaving it at residence is local; it must be in that place only *where the residence* is.

But upon the person it may be wherever the *person* is found, if the *local law*, the *lex fori* permits. And it would be no answer in a state which only permitted process to be served in its own limits in the county where defendant resides,

that a foreign judgment was had by *personal service* of a summons in that foreign state, if its laws allowed it. Each state has a right to say, if a party comes within its jurisdiction, *how* process shall be served while there.

In this case, then, when this *president*, a component part of that corporation, its head officer, was in New York, he was personally served with a summons on that corporation. It is not necessary that every member *should be served*. Any state *may* require that; New York has not.

7. What is meant by *jurisdiction?*

It is that the defendant shall be served with the judicial summons, warning, monition, or notice within the territorial jurisdiction of the court, according to the law of that territory the *lex fori*.

It is the *warning* that brings a corporation in court.

Not necessary for *board to meet* or have a quorum in the court house, or within foreign state.

The same notice given to a member or head officer out of the state gives the court jurisdiction, as it would if in the state where corporation resides.

IV. The cases which appear adverse on the subject are all upon the defects in the provision by common law or statute law for service.

Where common law or statute law does not provide that any service is good then it is not good. See 16 *Johns.* 6, *McQuin* v. *Middletown Man. Co.* Spencer, J., places it on this ground. In this and all the other cases the reasoning is on the ground that the words of the statute, the *lex fori* did not authorize it.

The new code does, in so many words. *Art.* 134.

16 *Johns.* 6, *McQuin* v. *Middletown Man. Co.* is not a case in point. Although *obiter dictum* of Spencer *seems* against us, it is only on the *common law* and *statute rule*.

*Angell & Ames on Corp.*, ed. *of* 1852, § 402, inclines in favor of suing foreign corporations.

15 *Serg. & Rawle* 176, *Bushel* v. *Commonworth Ins. Co.*, Rogers, J., does not go the whole length, but intimates opinion adverse to service.

8 *Serg. & Rawle* 517, *Pittsburg Turnpike Co.* v. *Cullen*, is only on construction of acts of Pennsylvania authorizing service. Act of New York (*Code*, § 134,) is clear.

9 *N. Hamp.* 394, *Selby* v. *Hodgoon*, is only upon the construction of the state statute.

13 *Vermont R.* 97, *Day* v. *Essex Co. Bank*, holds that foreign corporation can be sued.

*Dayton*, for defendant.

The answer to the plaintiff's argument is brief, but as it seems to me conclusive.

1. The first plea in this case was decided by the Chief Justice to be a good plea in the case of *Gilman* v. *Lewis*,* at Hudson circuit about one year since. An elaborate opinion was delivered in writing, to which I refer the court, having myself no copy, and the opinion not being in print.

This plea must of necessity be good, as it *negatives* every fact out of which jurisdiction arises. It avers that process was not served upon the company, or on any one duly authorized in its behalf. The allegation in plaintiff's argument, that the New York statute authorizes such a service upon the president, casually there, is an allegation, if it amounts to any thing, against the plea. If such service were valid and binding upon the defendant *here*, the plaintiff should have taken issue upon the plea. He cannot, on demurrer, avoid it by stating, *arguendo*, the New York statute, which, by the way, does not appear. Upon this plea, judgment must be clearly for defendants.

2. But the object is to have the opinion of the court upon second plea filed. To obtain this, and relieve the parties from the trouble and expense of carrying down the case to the circuit, the plea is in this form, *stating the fact*.

Is the service of process on an officer or agent of a foreign corporation, outside of the territorial jurisdiction creating it, binding on such corporation in another state? Or, to use an illustration from the plaintiff's brief, can a New England whaling company, having its office in New Bedford, be served

* See this opinion in note at end of this case.

with process on an officer or director being on a whale ship
in the Pacific or in a port at the Sandwich Islands? and, if so,
is the judgment thereon binding in Massachusetts? If such be
the law, then this company may be bound here for a judgment
rendered on a service upon its president *accidentally* in the
streets of New York, though the company had no office or
place of business within that jurisdiction.

The first obvious remark is, that such a rule of law would
be eminently dangerous; that states, by monition, notice, &c.,
would thus draw (as some are attempting to do) all sorts of
persons and cases within their own jurisdiction. The next
obvious matter is (as admitted by plaintiff's brief), that no
such principle is found any where in the common law. And
although there are many statutes of different states and coun-
tries declaring such service and analogous service good, it has
always been held good *only in that jurisdiction* which authorizes
it. *Story's Conflict of Laws* 457, § 546–7–8–9, and the notes
to last paragraph.

And so the jurisdiction over foreigners *within the territory*
applies *purely* to suits *personal. Ib.* 454, § 513–4, 457 to 462,
and notes.

To make a judgment binding, the court must have had ju-
risdiction of the *cause* and the *parties*, or, at common law, of
the *person* or *thing* to be affected. 3 *Mason C. C. R.* 158.
*Story's Conflict of Laws* 492–4.

On these grounds a judgment on *attachment* or where ser-
vice is by *seizing property*, is never binding " *in personam,*"
or at all, outside of the jurisdiction where judgment was ren-
dered. This has been so often decided that cases are needless.
It has been so ruled, I think, in New Jersey, as well as else-
where.

These principles will cover *this case.* This suit was not " *in
personam,*" nor have the courts of New York any jurisdiction
of the *thing* (the property of the company) to be affected by the
judgment.

But there is abundance of authority upon the point. Process
cannot be served on a foreign company (so as to bind it else-
where) by serving the same on an officer *accidentally* in an-

other state. *Angell & Ames* (last ed.) 395 to 400, 436–7 ; 1 *Miles (Penn.) R.* 78 ; 2 *Ib.* 171 ; 1 *U. S. Dig.* 505 ; 9 *New Hampshire* 394 ; 16 *Johns. R.* 5 ; 15 *Serg. & R.* 173 ; 8 *Ib.* 517 ; 16 *Pick. R.* 274 ; 13 *Conn. R.* 202 ; 14 *Ib.* 301.

All judgments obtained on such service are *purely local* in their character. A more full examination of cases will make this more clear. It must be so, unless the statutes of one state (altering the common law) are binding on such matters in another.

I do not answer the *remarks* in plaintiff's brief, because the case stands on *authority*.

ELMER, J. When the case of *Mills* v. *Duryee*, 7 *Cranch* 481, was decided by the Supreme Court of the United States, a majority of the judges seem to have understood that a judgment of a superior court of one of the states, when an action was brought upon it in another state, would be in all respects of the same effect as a judgment of a court in the state where the action was brought. Such was undoubtedly the opinion of Judge Washington, who, in the case of *Field* v. *Gibbs*, (*Peters' C. R.* 158) expressly states, that if the judgment has been obtained against a person residing out of the state, who was never served with process or notified of the existence of the suit, the remedy must be had by application to the court which rendered the judgment.

Mr. Justice Johnson, who dissented, predicted that great embarrassment would arise from the decision, and his prediction was soon verified. The courts of the states yielded to the decision of the tribunal, which, in questions relating to the constitution and laws of the United States, is superior to them, and therefore entitled to control them ; but it was found indispensably necessary, to prevent the most gross injustice, that it should be followed only in cases where, as the fact in that case was, the defendant appeared or was served with process. In almost every instance where actions were brought upon judgments obtained without a due service of process or appearance those courts sustained a special plea in bar, setting up that fact as a ground of defence. This course of decision

has recently been sanctioned by the Supreme Court of the United States. In the case of *Darcy* v. *Ketchum,* 11 *How.* 165, that court has placed its decision on the ground, " that upon the principles of international law, a judgment rendered in one state, assuming to bind the citizens of another, was void within the foreign state when the defendant had not been served with process or voluntarily made defence, because neither the legislative jurisdiction nor that of courts of justice had binding force." The principles of international law, in this respect, are simply those of natural justice; so that this decision accords in substance with the doctrine now held by the English courts in regard to Scotch, Irish, and colonial judgments, which is, that such judgments are conclusive, unless proved to have been rendered upon principles contrary to natural justice. 4 *Bing.* 686; 2 *Barn. & Adol.* 951 ; 12 *Cl. & F.* 386 ; 4 *E. L. & E. R.* 252.

It is, indeed, highly probable that the case of *Mills* v. *Duryee* would have been differently decided had the law in regard to the conclusive character of foreign judgments been at that time understood to be as it has been since established. As it is, however, the only practical effect of the decision has been to require the facts relied upon to avoid a judgment of the courts of a sister state, as having been rendered contrary to the principles of natural justice or international law, to be specially pleaded, instead of permitting them to be given in evidence under the plea of *nil debet.*

Most of the American cases have adopted the reasoning of C. J. Parsons, in *Bissell* v. *Briggs* (9 *Mass.* 462.) *viz.* " that judgments rendered in any other of the United States are not, when produced here as the foundation of actions, to be considered as foreign judgments, the merits of which are to be inquired into as well as the jurisdiction of the courts rendering them. But such judgments, as far as the court rendering them has jurisdiction, are to have in our courts full faith and credit." It is obvious, however, that the jurisdiction of a court depends upon the law of the country to which it is subject. If a state law enacts, as is the fact in some of the states, that an advertisement of a notice of the pending of a suit in

a newspaper shall authorize the defendant's appearance to be entered to an action against him, the courts of that state have jurisdiction over him in such a case, and are bound to exercise it. But when a judgment thus obtained comes to be the foundation of a proceeding in the courts of a state not bound by the particular law, in the absence of constitutional provisions, it will depend upon the law of comity what effect shall be given to it. By the law of comity, and by the constitution and laws of the United States, as now interpreted, the question will be, whether, as Lord Denham expresses it in *Ferguson* v. *Mahon* (11 *Ad. & E.* 179), the court had *properly* jurisdiction, or, in other words, did it obtain jurisdiction in a way consonant to natural justice; for, in the absence of positive law, that is the only standard.

The record of a personal judgment in a court of another state of general jurisdiction being *prima facie* conclusive, unless it appears on its face that the defendant was not served with process and had no opportunity to defend himself, it is presumed that the judgment was duly obtained : hence a plea that undertakes to show it to be void for want of a process or appearance must contain every averment necessary to prove it so, and must negative every legal presumption in its favor. *Shumway* v. *Stilwell*, 4 *Cowen* 292.

The first plea in this case avers, in substance, that the defendants were not citizens or residents of the state of New York, or existing as a corporate body under its laws, and that no process or other legal notice of the suit had been served upon them, or any one duly authorized in their behalf, and that there was no appearance or defence in the case. The averment, that the process was not served on " any one duly authorized in their behalf, is, in my opinion, ambiguous. One of the requisites of a good plea is, that it be certain ; and where a thing is omitted which is necessary to give certainty to the statement, it shall be taken most strongly against the defendant. *Co. Lit.* 303 *b.; Arch. Crim. Pl.* 235. Here it is not alleged that the process was not served on any one authorized to act in any business in their behalf, and I think the averment must be understood to mean only that it was not

served on any one duly authorized to act in their behalf in the matter of that suit.

The second plea avers that, at and before the commencement of the suit upon which the judgment was obtained, the defendants were not residents or citizens of the state of New York, or existing as a corporation under or by virtue of its laws, and had no office or place of business within said state, and were not within its jurisdiction; that they were a corporate body under and by virtue of the laws of New Jersey, where its president and officers resided and were citizens, and that the president of said company being accidentally in the city of New York, process was served on him, and that there was no appearance or defence in the suit.

No case in which the precise question raised by these pleas has been adjudicated was cited by the counsel, nor have I been able to find one. In the case of *McQuin* v. *Middletown Man. Co.* (16 *Johns.* 5), C. J. Spencer, delivering the opinion of the court upon a question arising under the law of New York then in force, says, " if the president of a bank of another state were to come within this state he would not represent the corporation here; his functions and his character would not accompany him when he moved beyond the jurisdiction of the government under whose laws he derived this character." This was a *dictum* only, but it has been approved by Justice Rogers, in the case of *Bushel* v. *Com. In. Co.* (15 *Serg & R.* 176); and similar language was used in the cases of *Middlebrook* v. *The Springfield Fire Ins. Co.* (14 *Conn.* 304), *Sibbey* v. *Hodgson* (9 *N. Hamp.* 396), *Peckam* v. *North Parish* (16 *Pick.* 286), *Nash* v. *The Rector, &c.*, (*Miles* 78). These cases turned rather upon the construction of the statutes of the different states than upon the question how a foreign corporation might be subject to process, so as to make a judgment against it conclusive in another state.

By the comity universally acknowledged in the states of this Union, and acted upon by the Supreme Court in the case of *Bank of Augusta* v. *Earl* (13 *Pet.* 519), corporations may send their officers and agents into other states, transact their business, and make contracts there; and in some instances the

laws of the states prescribe the mode and the terms upon which they may do so. I am not prepared to say, that if they choose to avail themselves of this privilege, natural justice will be violated by subjecting their officers and agents to the service of process on behalf of the corporation they represent; on the contrary, I think natural justice requires that they shall be subject to the action of the courts of the states whose comity they thus invoke. For the purpose of being sued, they ought in such cases to be regarded as voluntarily placing themselves in the situation of citizens of that state. Any natural person who goes into another state carries along with him all his personal liabilities; and there is quite as much reason that a corporation which chooses to open an office and transact its business, or to authorize contracts to be made in another state, should be regarded as thereby voluntarily submitting itself to the action of the laws of that state, as well in reference to the mode of commencing suits against it, as to the interpretation of the contracts so made. But I am quite prepared to say, that where a corporation confines its business operations to the state which has chartered it, a law of another state, which sanctions the service of process upon one of its officers or members accidentally within its jurisdiction is unreasonable, and so contrary to natural justice and to the principles of international law that the courts of other states ought not to sanction it. In such a case, a president or other officer ought not to be considered as carrying his official character along with him.

· The first plea in this case, averring only that the process was not served on any one duly authorized to act for the defendants in the suit, does not exclude the presumption that the defendants may have kept an office and habitually transacted their business in New York, and made the contract declared on there, and that the president, or some other officer of the corporation, may have been there transacting its business when the process was served, and is therefore, in my opinion, no bar to the action. The demurrer to this plea is well taken.

· But the second plea does negative such presumptions. It not only avers that the defendants, at and before the com-

mencement of the suit in which the judgment was obtained, had no office or place of business in the state of New York, and were not within its jurisdiction, but that the process was served on the president when he was accidentally therein. Such a service did not properly give jurisdiction to the court of New York so that the courts of this state ought to treat a judgment thus obtained as binding here. In my opinion this plea sets up a good bar to the action, and the demurrer thereto must be overruled, and judgment rendered for the defendants.

HAINES, J. Under the pleadings in this case, two questions arise: first, whether a defendant who is sued in a court of one state, may question the conclusiveness of the judgment of a court of another state, by pleading that he was not served with process, nor was ever within the jurisdiction of the court which rendered the judgment; and secondly, if he may, do the pleas in this case, or either of them, properly set up such want of jurisdiction.

It is a principle of the common law and of common justice that no man shall be condemned unheard, a principle applicable as well to civil as to criminal cases. Before judgment is pronounced, the court should see that the defendant had an opportunity of being heard and making his defence.

The resolution of the first question depends, in a great measure, upon the construction of the first section of the fourth article of the constitution of the United States and of the act of congress of 26th May, 1790.

The constitution declares "that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state," and that the "congress may, by general laws, prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof."

By the act of 26th May, 1790, ch. 11, congress provided a mode of authenticating records and judicial proceedings of the state courts, and then enacted, "that the records and judicial proceedings authenticated as aforesaid shall have such faith and credit given to them in every court within the United

States as they have by law or usage in the courts of the state from where the said records are taken."

The first expression of opinion by the United States Supreme Court under this act reported, is that of *Mills'* v. *Duryee*, 7 *Cranch's R.* 483, at February term, 1813. Justice Story, who delivered the opinion of the court, said, " that the record was the faith and credit of evidence of the highest nature, *viz.* record evidence." If it be a record conclusive between the parties, it cannot be denied but by plea of *nul tiel record.*

In this case there was no question of the jurisdiction of the court whence the record came, nor of the conclusiveness of the judgment there, " for the defendant had full notice of the suit, and was arrested and gave bail." *Page* 484. The case does not determine the point now raised. The question there was, whether *nil debet* is a good plea to an action of debt on a judgment. It may well be inferred, from what was said, that if the want of jurisdiction had been properly pleaded, it would have been a good defence.

Justice Johnson, anticipating the trouble that might arise from so general an expression, dissented from the opinion of the court. He rather *varied* in the mode of expression than dissented from their conclusion. " I am induced," said he, " to *vary* in deciding the question, from an apprehension that receiving the plea of *nul tiel record* may at some future time involve the courts in inextricable difficulty," and he cited the cases of *Holker* and Pastier, which was before the court at that time, and to which a judgment of $150,000 was given in Pennsylvania on an attachment levied on a cask of wine and cloth on the judgment brought upon it in Massachusetts, and added, " Now if in the action *nul tiel record* must necessarily be pleaded, it would be difficult to find a method by which the enforcing of such a judgment could be avoided. There are certain eternal principles of justice which never ought to be dispensed with, and which courts never can dispense with but when compelled by positive statute. One of these is, that jurisdiction cannot be justly exercised by a state over property not within the reach of its process, or over per-

sons not owing their allegiance or not subjected to their jurisdiction by being found within their limits."

The next case is that of *Hampton* v. *McConnel*, 3 *Wheat. R.* 234, decided in 1818. This was on a plea of *nil debet*, and no question was raised about the jurisdiction or service of process. Marshall, C. J., in delivering the opinion of the court, reaffirmed the doctrine of *Mills* v. *Duryee*, considering it precisely the same, and not to be distinguished from that case. In both cases the only point decided was that *nil debet* in those suits was not a good plea, and the question was then still left open in that court, whether a special plea of fraud might not be pleaded, or a plea to the jurisdiction of the court in which the judgment was obtained. See note of reporter, 3 *Wheat. R.* 236. And so it appears, from the language of Judge Story, in his Commentary on the Conflict of Laws, published in 1834, page 509, § 609. He there says, " Judgments are put upon the footing of domestic judgments; but this does not prevent an inquiry into the jurisdiction of the court in which the original judgment was rendered to pronounce the judgment, or the right of the state to exercise authority over the parties or the subject matter. The constitution did not mean to confer any new power upon the state, but simply to regulate the effect of their acknowledged jurisdiction over persons and things within their territory." See, also, *Story's Com. on the Constitution*, c. 29, § 1297 to 1307.

In *Rose* v. *Himley*, 4 *Cranch's R.* 269, decided in 1809, C. J. Marshall said, Upon principle, it would seem that the operation of every judgment must depend upon the power of the court to render judgment, or, in other words, its jurisdiction over the subject matter which it has to determine.

That such is the true reading of *Mills* v. *Duryee* and of *Hampton* v. *McConnel*, also appears from the case of *McElmoyle* v. *Cohen*, 13 *Peters* 326, decided at January term 1839, and the remarks there made by Justice Wayne ; and from the more recent case of *D'Arcy* v. *Ketchum et al.*, 11 *Howard's U. S. R.* 165, where the question now under consideration came directly up. It was an action in Louisiana, on a judgment rendered, in 1847, in New York, pursuant to the statute

of that state, against *Gossip* and *D'Arcy*. Gossip had voluntarily appeared and pleaded, but D'Arcy was not served with process or any notice of the proceedings, and judgment was rendered against both. It was held that, by the international law existing at the time of the adoption of the federal constitution, such judgments were disregarded and held to be void by courts of a foreign jurisdiction, and that the law existing among the states before 1790 was, that a judgment of one state assuming to bind the person of a citizen of another state was void within the foreign state when the defendant had not been served with process or voluntarily made defence ; because neither the legislative jurisdiction nor that of the courts of justice had any binding force, and that the constitution and act of congress were not intended to overthrow this principle, and declare a new rule which would bind citizens of one state to the laws of another.

This, being the determination of the highest tribunal on a section of the constitution and an act of congress, must be decisive ; and the result is that a judgment of another state is not necessarily conclusive, but that the party may, by proper pleas, question the jurisdiction of the court where the judgment was rendered over the person or property of the defendant therein or the subject matter of the suit.

If a judgment be conclusive when the court which rendered it had no jurisdiction, then new power is conferred upon the states, a power, namely, to authorize its courts to condemn a party unheard, and to reach his person or property beyond its territorial limits—a new power to parties to reach their adversaries out of the state, by finesse or collusion within it.

It may not be amiss, and perhaps not without interest, to examine some of the cases that have arisen in the state courts involving this question.

It will be remembered that at the time of the American revolution the law as to judgments of another state or kingdom was very unsettled. " In England it was an open question, having on both sides her eminent equity, common law, and ecclesiastical jurists." Wayne, J., in *McElmoyle* v. *Cohen.*

The articles of confederation, therefore, to settle the ques-

tion, provided that " full faith and credit shall be given in each of the states to the records, acts, and judicial proceedings of the courts and magistrates of every other state." *Art. 4th.*

But a question then arose as to the mode of authentication, and when the constitution was framed that was provided for, by giving to congress the power to prescribe the manner in which the records should be proved, and the effect thereof. Then followed the act of congress of May 26, 1790, before referred to.

At first some of the state courts, in construing the constitution and act of congress, placed judgments of other states on the same footing with foreign judgments, and held them to be evidence *prima facie* of a debt, open to examination and impeachable collaterally on any ground originally available. *Bartlett* v. *Knight*, 1 *Mass. R.* 401 ; *Hatchcourt* v. *Acken*, 1 *Caines' R.* 460 ; *Taylor* v. *Bryden*, 8 *Johns. R.* 173 ; *Pawling* v. *Bird's executors*, 13 *Johns. R.* 190.

In New Jersey, the courts considered them rather in the character of domestic judgments, without determining the question as to the jurisdiction of the courts which rendered them.

In *Olden* v. *Hallett*, 2 *South. R.* 469, decided in February, 1819, Kirkpatrick, C. J., said, the constitution and act of congress place such judgments on a different footing from what are commonly called foreign judgments, and give them all the force and effect of judgments of every other state.

In *Lanning* v. *Shute, Ib.* 779, the same doctrine is held, and the authority of *Hampton* v. *McConnel* recognised as conclusive. In neither of these cases was the jurisdiction of the courts which rendered the judgment brought in question.

In *Gulick* v. *Loder*, 1 *Green's R.* 68, decided February, 1832, the principal question was, whether a judgment of another state could be enforced here after the lapse of twenty years, and C. J. Ewing, on page 70, incidentally held, " that the judgment was not technically a foreign judgment, the mere *prima facie* evidence of a debt, but must be considered as conclusive evidence of debt ;" and he refers to *Mills* v. *Duryee* as having quieted all controversy on that subject. But

the question of jurisdiction was not raised even in that case, and I am not aware of the point ever having been formally determined in this state.

In Massachusetts, the case of *Bissel* v. *Briggs*, 9 *Mass.* 462, decided in March, 1813, about cotemporaneously with *Mills* v. *Duryee*, but before the report of it was published, put the question on its true footing, and became the basis of future judicial decision in that state and in some others. Parker, C. J., there remarked, " whenever, therefore, a record of a judgment of any court of any state is produced as conclusive evidence, the jurisdiction of the court rendering it is open for inquiry; and if it appear that the court had no jurisdiction of the cause, no faith or credit whatever shall be given to the judgment."

Afterwards, in 1822, in the case of *The Commonwealth* v. *Green*, 17 *Mass. R.* 546, the court considered the cases of *Mills* v. *Duryee* and of *Hampton* v. *McConnel* as ruling that the judgment was conclusive. But in 1828, in *Hall* v. *Williams*, 6 *Pick. R.* 232, Parker, C. J., says, " The court, in *Commonwealth* v. *Green*, yielded a painful deference to the decision of *Mills* v. *Duryee* and *Hampton* v. *McConnel* without that close examination it would have received if presented to them otherwise than incidentally and if its bearing had been of importance before the court; but the notice taken of the case was merely the expression of an opinion *arguendo*, and not a judicial determination of the question." The principles of *Briggs* v. *Bissel* were here fully sustained.

The subsequent cases of *Woodward* v. *Tremere*, 6 *Pick. R.* 354, *Newell* v. *Newton*, 10 *Pick. R.* 472, *Healy* v. *Root*, 11 *Pick. R.* 390, *McRhea* v. *Mattoon*, 13 *Pick. R.* 58, all recognise the principles of *Bissel* v. *Briggs* and *Hale* v. *Williams*.

In New York, *Wilburn* v. *Woodworth*, 5 *Johns. R.* 41, was an action on a judgment obtained in Massachusetts, the defendant not being resident there when the action was commenced, nor served with process; the court held, that to bind a defendant personally by a judgment when he was not per-

sonally summoned, nor had notice of the proceeding, would be contrary to the first principles of justice.

So in *Fenton* v. *Garlick*, 8 *Johns. R.* 197, it was held that a judgment rendered in Vermont against a citizen of New York without notice is a nullity.

In *Borden* v. *Fitch*, 15 *Johns. R.* 121, the question arose upon a decree of divorce rendered in Vermont. Thompson, C. J., on page 141, said, " To give any binding effect to a judgment, it is essential that the court should have jurisdiction of the person and of the subject matter; and the want of jurisdiction is a matter that may be always set up against a judgment when sought to be enforced, or where any benefit is claimed under it. The want of jurisdiction makes it utterly void and unavailable for any purpose." In pages 143–4, commenting on *Mills* v. *Duryee*, which had been pressed by counsel as a binding and controlling decision as to the decree of divorce, he added, " I have a very strong conviction that the constitution of the United States and laws of congress cannot be applied to a judgment which we consider void on the first principles of justice, so as to make it conclusive, and I cannot persuade myself that it was so intended."

The doctrine was reaffirmed in *Shumway* v. *Stillman*, 4 *Cowen's R.* 294, and recognised. *Starbuck* v. *Murray*, 5 *Wend.* 148.

In *Shumway* v. *Stillman*, in error, 6 *Wend.* 449, Savage, C. J., after reviewing all the cases, remarks (page 453), " An examination of all the cases results in the establishment of the following proposition : that the judgment of a court of general jurisdiction in any state of the Union is equally conclusive upon the parties in all the other states as in the state in which it was rendered. This, however, is subject to two qualifications : 1. If it appear by the record that the defendant was not served with process, and did not appear in person or by attorney, such judgment is void. 2. If it appear by the record that the defendant appeared by attorney, he may disprove the authority of such attorney to appear for him." How far this latter qualification is to be recognised as law in New Jersey,

is at least a question. In *Hendrickson* v. *Hendrickson et al.*, 3 *Green's R.* 102, it seems not to have been admitted.

In *Mervin* v. *Kumbel*, 23 *Wend.* 293, all the judges were agreed that the judgment did not prove a debt against a defendant who was never brought into court.

In other states, the same principles have been fully recognised and held. In Maine, *Adams* v. *Roe*, 2 *Fairfield* 95, *Hale et al.* v. *Williams*, 1 *Fairfield* 283. In New Hampshire, *Whittier* v. *Wendal*, 7 *N. H. R.* 257. In Connecticut, *Aldrick* v. *Kinney*, 4 *Conn R.* 380. In Maryland, *Wemway* v. *Pauling*, 5. *Gill & John.* 500. In Tennessee, *Hodge* v. *Deaone*, 1 *Yerger's R.* 125. In Kentucky, *Rogers* v. *Colman*, *Hard. R.* 413. In Illinois, *Rust* v. *Frothingham*, 1 *Breese R.* 259. In South Carolina, *Miller* v. *Miller*, 1 *Baily's R.* 244.

From the course of the authorities, and of the principles which govern them, there can be no doubt of the power of this court to inquire into the jurisdiction of the court before which the judgment in question was rendered.

If it be said that the same effect must be given to it here as if it were sued in the state of New York, it may be replied, that it is not necessarily so, as the cases referred to clearly prove. But if it were so, then what effect would such judgment have in New York, if declared upon there? In *Oakley* v. *Aspinwall*, 4 *Comstock's R.* 513, decided in the Court of Appeals of New York, Brown, C. J., in a very able opinion, held that the record of a judgment against two, one of whom was not served with process, was not even *prima facie* evidence of a debt against the defendant not brought into court. In that case the judgment was rendered by a court of the state of New York, and a record of it offered before a court of the same state. See, also, *Hackburt* v. *The Hope Mutual Insurance Co.*, 4 *How. Pr. R.*, *N. Y.*, 275, and *Brewster* v. *Michigan Central Railroad Co.*, 5 *How. Pr. Rep.*, 183.

The remaining question is, do the pleas filed in this case, or either of them, properly set up the want of jurisdiction.

It is a presumption, arising from a judgment, that the parties were properly before the court, according to the laws of the state in which it was rendered. And he who questions

the jurisdiction must negative every fact from which it may arise.

Jurisdiction may arise from the residence of a defendant, or the service of process upon him within the territorial limits of the court, or from the existence of a corporation by the laws of the state, or its having property or a place of business within it, or transacting business there, or from a proper appearance before the court.

The first plea denies that the defendants were citizens or residents of the state of New York, and their existence as a corporate body under and by virtue of its laws, or that process or other legal notice was served upon them, or upon any one duly authorized on their behalf, or that they appeared, pleaded, or made defence. But it does not deny that the defendants had a place of business in the state of New York, or that they were transacting business within that state. And, for aught that appears, they may have had an office and transacted business there, and thereby placed themselves within the jurisdiction of the courts. The averment that process was not served on any one duly authorized on their behalf, fails for want of certainty. If by it is meant that no person was authorized to receive the service of process, it is but a denial of what can scarcely be supposed ever to occur; for we cannot expect a corporate body to invite controversy by appointing an agent to be served with process. If the averment means that it was not served on any one authorized to transact business for the company in New York, it should have so been plainly expressed. For this reason, the first plea is faulty, and the demurrer to it must be sustained.

The second plea, after denying the various matters from which jurisdiction may arise, avers that Joseph C. Potts, who was and is the president of the company in New Jersey, being accidentally in the city of New York, was served with process in that suit, and that the defendants were not within the jurisdiction of the court or of the state, &c.

This presents the question, whether jurisdiction may be obtained over a foreign corporation by serving process upon its president, who may accidentally be within its territorial limits.

By the common law, process against a corporation must be served upon its head or principal officer within the jurisdiction of the sovereignty by whose laws it exists. *Tidd's Pr.* 114 ; 2 *Arch. Pr.* 98. Any authority for proceeding against it in any other manner must be conferred by the statute of the state where the process is served.

A judgment obtained without notice, we have before seen, is inoperative; and the inquiry now is, whether legal notice was given to the defendants in the suit in which the judgment now before us was obtained. Did the president, when he accidentally went into the state of New York, so represent the corporation as to subject it to the jurisdiction of its courts by the service of process upon him ?

The existence of a foreign corporation is recognised in other states, and they have the capacity to sue and be sued out of their own state. *Bennington Iron Co.* v. *Rutherford,* 3 *Har. R.* 158. But when a corporation sues out of its own state, it is represented by its officers duly authorized to act in that respect or by its attorney properly appointed. They can be sued only when they subject themselves to the jurisdiction of the courts by establishing a place of business within its territorial limits, or by having property there, or by the presence of its officers clothed with authority to do and to receive on their behalf. If they authorize their officers to transact business for them in another state, they thereby subject themselves to the jurisdiction, and become answerable to the laws of that state.

But it does not follow that the head officer of a corporation bears about in his person so much of its artificial existence as to subject the body to the laws of any state or kingdom which he may enter.

It is true that in this state a corporate company may be sued by process served on its officers in any county, however remote from that in which is its place of business; but that is by express enactment, and extends only to companies created by its laws, and which may be supposed to exist in every part of it.

Justice Spencer, in *McQuin* v. *The Middletown Manufacturing Co.,* 16 *Johns. R.* 5, said, " if the president of · a bank of another state were to come within this state, he would

Moulin v. Insurance Co.

not represent the corporation here; his functions and his character would not accompany him when he moved beyond the jurisdiction of the government under whose laws he derived that character."

The remark, although it be a mere *dictum*, is feasible, and worthy of our consideration. The same principle is recognised incidentally in the case of *Peckham* v. *The North Parish of Haverhill*, 16 *Pick. R.* 286.

The court, in *Libbey* v. *Hodgson*, 9 *N. Hamp. R.* 394, doubted whether the casual presence of the principal officer of a foreign corporation, and service of process upon him, was sufficient to give jurisdiction.

In *Day* v. *The Essex County Bank*, 13 *Vermont R.* 97, it was held that there was no ground to doubt whether a private corporation of another state could not be held to answer to an action in the courts of *Vermont*, and that there is no substantial reason why artificial persons should not be sued in the courts of another state as well as natural persons.

This is but the assertion of the general principle, that a corporation may be sued out of its own state, without any suggestion as to the manner in which jurisdiction is to be obtained over it. In *Nash* v. *The Rector, &c.*, 1 *Miles R. (Pa.)* 78, and *Dawson* v. *Campbell*, 2 *Miles R.* 171, it was expressly declared that a foreign corporation cannot be summoned by a service on its head or chief officer, who at the time of the service may be within the jurisdiction of the state.

I am satisfied, as well upon the reason of the matter as by the authorities referred to, that such service is not sufficient, and that it is not such notice of the suit as will bind the defendants. The corporation may elect in the forum of what state or district it will litigate, by confining its operations to the limits of such state or district. If they choose to transfer any part of their business to another state, they subject themselves to its laws. If they confine their operations to their own state their creditors must pursue them there.

The second plea, in my judgment, is sufficient, and the demurrer to it must be overruled.

The CHIEF JUSTICE concurred.

NOTE.—The reporter is happy to have it in his power to give to the profession the opinion of the Chief Justice in the case of *Gilman* v. *Lewis,* in the Hudson circuit, referred to in the brief of Mr. Dayton.

*Opinion.* The plaintiff, in the first and second counts of his declaration, counts upon two judgments recovered in the Court of Common Pleas of the county of Somerset, in the state of Maine.

To these counts the defendant pleads—

1. " *Nul tiel record.*"

2. That the defendant was not served with process or with notice of the commencement or institution of the said suits, and that the proceedings, if any were had, were without the knowledge of the defendant, by reason whereof the said supposed recoveries were illegal and void, and of no force or effect against the defendant or his property.

3. That the plaintiff sued out a writ of execution upon each of the said judgments, and, by virtue thereof, the sheriff of the county of Somerset levied upon certain goods and chattels, the property of the defendant, and took and carried the same away, and continued to keep the same for the purpose of selling and satisfying the said judgments, which property is ample and sufficient for the satisfaction of the said supposed recoveries.

To the two last pleas the plaintiff demurs specially.

By the constitution of the United States, article 4, § 1, it is declared that " full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the congress may, by general laws, prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof." The act of congress of May 26th, 1790, (1 *Story's Laws U. S.* 93) after designating the mode in which they shall be authenticated provides that " the said records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the state from whence the said records are or shall be taken."

Both the constitution and the legislative provisions have given rise to much discussion and conflict of opinion. At an early period, the courts of Massachusetts and New York held that these provisions were designed merely for the better authentication and proof of the records and judicial proceedings of other states, and not to confer upon them, when proved, any greater or more binding efficacy than they would have possessed independently of any such provision. *Bartlett* v. *Knight*, 1 *Mass.* 401; *Hitchcock* v. *Acken*, 1 *Caines* 460; *Taylor* v. *Briden*, 8 *Johns. R.* 93; *Pawling* v. *Executors of Bird*, 13 *Ib.* 192.

On the other hand, it was held by Justice Washington that a judgment rendered in one state is conclusive between the parties in every other state, precisely in like manner as it would be had a suit been brought upon the judgment in a court of the state where that judgment was rendered, and that if a judgment was obtained against a person residing out of the state, who was never served with process, or even notified of the existence of the suit, his remedy would be the same, and no other, as would be open to him if the suit were brought in the state where the judgment was rendered. The court in which the judgment was given would, upon motion accompanied by sufficient proof, stay the execution and set aside the judgment. *Field* v. *Gibbs*, 1 *Peters' C. C. R.* 157; *Green* v. *Sarmiento*, *Ib.* 74.

And in *Hampton* v. *McConnel*, 3 *Wheat.* 234, C. J. Marshall, delivering the opinion of the court and affirming the earlier case of *Mills* v. *Duryee*, said, that the judgment of a state court has the same credit, validity, and effect in every other court in the United States which it had in the state where it was pronounced, and that whatever pleas would be good thereon in such state, and none other, could be pleaded in any other court in the United States.

This may now be considered as the settled doctrine of the American courts, so far, at least, as establishing the principle, that the judgments of other states are not to be regarded as foreign judgments, and their merits to be inquired into upon a plea of "*nil debet*," but that they are final and conclusive,

and can only be contested upon a plea of "*nul tiel record.*" *Armstrong* v. *Cargous' executors*, 2 *Dall.* 352; *Mills* v. *Duryee*, 7 *Cranch* 481; *Hampton* v. *McConnel*, 3 *Wheat.* 234; *Gulick* v. *Loder*, 1 *Green* 68; *Reed* v. *Ross, Baldwin* 36; *Benton* v. *Bargot*, 10 *Serg. & R.* 240; *Evans* v. *Sartori*, 9 *Ib.* 252; *Bissel* v. *Briggs*, 9 *Mass.* 462; *Hall* v. *Williams*, 6 *Pick.* 232; 3 *Story's Com.* 133.

It seems, however, to be well settled, contrary to the opinion of Washington, J., in *Field* v. *Gibbs*, that in a suit upon a record of a judgment in another state, it is competent to avoid the judgment, by showing not only a want of jurisdiction in the court, but also a want of jurisdiction of the state in which the judgment was rendered, over the person or the property to be operated upon by the judgment.

The judgment of another state, says Justice Story, "is put upon the same footing as a domestic judgment." But this does not prevent an inquiry into the jurisdiction of the court in which the original judgment was given to pronounce it, or the right of the state itself to exercise authority over the persons or over the subject matter.

The constitution did not mean to confer a new power or jurisdiction, but simply to regulate the effect of the acknowledged jurisdiction over persons and things within the territory. 3 *Story's Com.* 133; *McElmoyle* v. *Cohen*, 13 *Peters* 312; *Borden* v. *Fitch*, 15 *J. R.* 121; *Shumway* v. *Stillman*, 4 *Cowen* 292; *Shumway* v. *Stillman*, 6 *Wend.* 447; *Bissel* v. *Briggs*, 9 *Mass.* 462; *Hand* v. *Barretts*, 1 *Hall* 155; *Gleason* v. *Dodd*, 4 *Miles* 333.

Admitting the right of the defendant to plead in avoidance of the judgment, by showing a want of jurisdiction in the court, or in the sovereignty in which the court was held over his person, is the plea filed valid? It avers simply that neither the defendant, nor any one on his behalf, was served with process, and that he had no knowledge of the proceeding. Now this may all be true, and yet the jurisdiction of the court be complete. There is no denial that at the institution of the suit the defendant was a citizen of the state of Maine, and subject to the laws of that commonwealth. The mode of instituting

suits in several of the New England states is not by personal process, but by attachment against the property. Whatever may be the effect of a judgment thus recovered against the citizens of other states, its conclusive effect against the citizens of the state in which the judgment is rendered cannot be questioned. We have a statute in this state authorizing judgment to be entered against two or more joint debtors, if served upon one. Such service of process brings all the defendants within the jurisdiction of the court, and if they be citizens and residents of the state, the judgment, as to all the defendants, is conclusive here and elsewhere. And yet such a defendant might with truth plead to this the very plea filed in this cause.

Nor does the plea contain any averment that the defendant did not appear and defend the action. It does, indeed, aver that the proceedings were without the knowledge of the defendant, but it does not follow that there was no appearance. He may have had an authorized agent or attorney who appeared and defended the action in the name and by the authority of the defendant.

In *Haywood* v. *Barrett*, 1 *Hall* 155, the plea averred that the defendants were citizens and residents of the state of New York; that no process was served upon them, or either of them, nor did they, or either of them, ever have any notice of the said suit. Upon general demurrer, the plea was overruled. The court said, " this plea ought to have contained a direct and positive averment that the defendant had not appeared in the suit in which the judgment in question was obtained.

The record of the judgment is *prima facie* evidence of the jurisdiction of the court by whom it is pronounced, and will be held conclusive until clearly shown to have been rendered without jurisdiction. *Shumway* v. *Stillman*, 4 *Cowen* 296.

The plea is radically defective, and must be overruled.

The defendant further pleads, that, by virtue of an execution issued upon the judgment, the sheriff levied upon sufficient of the defendant's goods and chattels to satisfy the judgment.

It was a familiar principle of the ancient common law that

every obligation is to be discharged only by an instrument of equal solemnity with that by which it was created. " *Eo ligamine quo ligatus.*" A debt of record must have been discharged of record. A specialty debt by *debt.* Hence, prior to the statute of Anne, *Cro. Car.* 328, payment could not be pleaded either to an action on a bond or a judgment. The English statute, therefore, of which, in this respect, ours is a copy, authorizes payment to be pleaded in bar to an action of debt on single bill or of debt on *scire facias* on judgment *Stat.* 4 *Anne, cap.* 16, § 12; 1 *Chit. Pl.* 512, 702; *Rev. Stat.* 803, § 8.

But part payment cannot be pleaded in bar to an action on a judgment, nor is accord and satisfaction a good plea, for it is not within the statute.

And it appears by the *Year Book,* 20 *Hen.* 6, *pl.* 24, and 1 *Hen.* 6, *pl.* 15, that it was much doubted whether "levied by the sheriff upon a *scire facias* be a good plea;" and at length it was ruled to be good, because it is grounded upon the *fieri facias* awarded, which he (the defendant) cannot withstand and in reason, therefore, it should then be allowed. *Cro. Car.* 328, *Vesey* v. *Haines.*

The defendant may plead that the debt was levied by a *fi. fa.* or *eligit* or *ca. sa.* 1 *Chit.* 522, (7th Am. ed.)

To constitute a valid defence, the plea should clearly show either that the sheriff has levied (and by levied, here is meant *made* or *raised*) the debt, or that by virtue of a writ of *fieri facias* or other process, to him directed and delivered, he had seized and taken sufficient property of the defendant to satisfy the execution, and that he had so returned upon the writ, or that he still detains the property, or, at least, that the property so taken was subject to no other prior claim, lien, or encumbrance. Every good precedent and every adjudication will be found to support this view. *Clark* v. *Withers,* 2 *S. & R.* 107; *Hancock* v. *Morgan,* 1 *S. & R.* 92–7; *Viner's Ab.* 365, *Debt X.*

The plea of satisfaction by writ of *eligit* avers that the property was delivered to the plaintiff, to be held by him until he should fully have levied the damages. 7 *Wentworth* 89, 90.

In *People* v. *Gallier,* 4 *Moore* 163, the defendant pleaded

that the sheriff of *Herefordshire*, by virtue of a writ of *fieri facias* to him directed and delivered, seized and took in execution divers goods and chattels of the defendant of the value of £—, as by the writ of *fi. fa.*, remaining in the court, more fully appears. Upon demurrer the plea was adjudged ill, because the plea merely stated that the sheriff seized the defendant's goods, and took them in execution, but did not state that he had returned the writ.

In *Dyer* 299, it is said that a plea that the sheriff delivered the moiety of the land extended to the plaintiff, is good without showing the return. But in such case the plea, as has been shown, shows upon the face the fact that the lands have been delivered to the plaintiff, to be held by him till the debt is satisfied.

And in *Atkinson* v. *Atkinson, Cro. Eliz* 391, though there was no return by the sheriff averred, yet the money had been paid to the sheriff. *Rook* v. *Wilmot, Cro. Eliz.* 209 ; *Mount* v. *Andrews, Ib.* 237.

The plea in this case does not aver that the sheriff levied the debt, nor that he has levied on goods and chattels sufficient to satisfy the execution, and still keeps them, nor that he has returned upon his execution that he levied upon property sufficient to satisfy the debt. In either of these cases the plaintiff would have had his remedy against the sheriff in case of his failure to pay over the money, and the defendant would have been discharged. All that is averred in the plea may be true, and yet the property may have been restored to the defendant, or may have been exhausted by earlier and prior liens or executions, without availing the plaintiff one dollar, and the sheriff may have so returned his execution.

Judgment upon both demurrers must be entered for the plaintiff, with costs.

One of the special grounds of demurrer assigned to each of the pleas is, that it is inconsistent with the plea of *nul tiel record*, and cannot be pleaded together with it, the one requiring a trial by record, the other a trial by the country.

The objection, though well taken, is not available upon demurrer. The practice is to move the court to put the defend-

ant to his election by which plea he will abide. *Riley* v. *Riley*, *Spencer* 114; 1 *Chit. Pl.* 594 (*7th ed.*)

As the defendant has pleaded *nul tiel record*, as the plaintiff has been put to two demurrers and subjected to much delay by the pleas now overruled (a former amendment having been permitted), the defendant will not be permitted to amend, except upon the payment of costs, affidavit of a meritorious defence under the plea or pleas sought to be amended, election to abide by the amended pleas, a withdrawal of the plea of *nul tiel record,* and a filing of the amended pleas during the present term : upon these terms the defendant, if desired, has leave to amend.