## COOPER *v.* NEWELL.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 184.   Argued January 12, 13, 1899. — Decided April 3, 1899.

In 1850 McGrael, a resident citizen in Brazoria County, Texas, brought an action against Newell, who was alleged to be a citizen and resident in that county, to recover several parcels of land. Swett, an attorney at law, appeared for Newell and a verdict was rendered that McGrael recover the tracts, upon which verdict judgment was rendered in his favor, and he went into possession. At the time when that action was brought Newell had ceased to be a citizen of Texas, and had become a citizen of Pennsylvania, from whence he soon removed to the city of New York, and became a citizen of that State, and spent the remainder of his life there and died there. He was never served with process in

the action in Texas, no notice of it was given him by publication, he never authorized Swett to appear for him; and was ignorant of the whole proceeding. In 1890, upon the matter coming to his knowledge, he brought this action in the Circuit Court of the United States for the Eastern District of Texas against persons occupying and claiming part of the land, setting up the above facts, and asking a decree that the judgment of 1850 was null and void, and not binding upon him. He died before trial could be had, and the action proceeded to trial and judgment in the name of his executors. The jury found a verdict in favor of the executors, judgment was rendered accordingly, and an appeal was taken to the Court of Appeals. In answer to a question certified to this court by the Court of Appeals, it is *Held*, that the said judgment of the district court of Brazoria, Texas, which was a court of general jurisdiction, was, under the circumstances stated, subject to collateral attack in the United States Circuit Court for the Eastern District of Texas, sitting in the same territory in which said district court sat, in this suit, between a citizen of the State of New York and a citizen of the State of Texas by evidence *aliunde* the record of the state court.

The Circuit Court of the United States sitting in the State of Texas was not bound to treat the judgment of the district court of Brazoria County as if it were a domestic judgment drawn in question in one of the state courts, and to therefore hold that it could not be assailed collaterally, but, on the contrary, it was no more shut out from examining into jurisdiction than is a Circuit Court of the United States sitting in another State, or than are the courts of another State.

THIS is a certificate from the Circuit Court of Appeals for the Fifth Circuit, stating that the "suit was originally brought by Stuart Newell against Eliza Cooper and B. P. Cooper and Fannie Westrope, as defendants, in the Circuit Court in and for the Eastern District of Texas, sitting at Galveston, in the ordinary form of trespass to try title, under the Texas statutes, to recover one hundred and seventy-seven acres of land in Harris County, Texas, described in plaintiff's petition, which said petition was filed on the 5th day of July, 1890. The said Stuart Newell was alleged to be a citizen of New York, and the said defendants all citizens of Texas."

That prior to the trial Stuart Newell died, and the proper persons were duly made parties plaintiff, as well as an additional party defendant, and plaintiffs filed their fifth amended original petition, in which, in addition to the usual averments required to be made by the Texas statutes in an action of trespass to try title, plaintiffs further alleged that defendants

set up title to the land in controversy through a judgment rendered May 21, 1850, in the district court of Brazoria County, Texas, in favor of Peter McGrael and against Stuart Newell, a certified copy of which proceedings was attached to and made a part of said amended petition; and "that said judgment was null and void and was not binding on the said Stuart Newell nor plaintiffs, nor could defendants claim title under said judgment for the following reasons, viz.:

"That at the time of the filing of said suit and the rendition of said judgment said Stuart Newell was not a resident of Brazoria County, Texas, nor of the State of Texas, nor was he then within said Brazoria County or the State of Texas; that at no time did he ever reside in Brazoria County, Texas; that on the 2d day of January, 1848, said Stuart Newell, who then resided in Galveston County, Texas, removed from said Galveston County to the city of Philadelphia, in the State of Pennsylvania, and resided in said city of Philadelphia, in the State of Pennsylvania, continuously from said date until the year 1854, when he removed from said city of Philadelphia to the city of New York, in the State of New York, where he continued to reside up to the time of his death: to wit, April 11, 1891.

"That during the time of his residence in the city of Philadelphia he was a resident citizen of the State of Pennsylvania, and during his residence in the city of New York he was a resident citizen of the State of New York, and has never at any time been a citizen of the State of Texas, nor has he, at any time since the year 1848, when he left Galveston County, been anywhere in the State of Texas, but at all times since said year 1848, up to the time of his death, had resided and been without the limits of the said State of Texas and within the said city of Philadelphia, State of Pennsylvania, and the said city of New York, in the State of New York; that Stuart Newell was never served with citation, process or otherwise notified of the existence of said suit of *Peter McGrael* v. *Stuart Newell;* nor was he a party to said suit with his knowledge, consent or approval; nor did he submit himself to the jurisdiction of the said court; nor did he employ or

authorize any one to represent him or enter an appearance in said suit; nor did he know of the existence of said suit in any manner until just prior to the institution of this suit.

"That if any attorney appeared for said Stuart Newell in said suit he did so without any authority, permission, knowledge, or consent of or from the said Stuart Newell, and that such appearance, if any there was, was through collusion with said attorney and plaintiff in said suit to injure and defraud the said Stuart Newell; and it was expressly denied that I. A. or J. A. Swett had any authority or permission from said Stuart Newell to enter an appearance in said cause, nor was such appearance on the part of the said I. A. or J. A. Swett done with the knowledge, consent or approval of said Stuart Newell; that at the time of the entry of said judgment said Stuart Newell had a meritorious defence to said suit, and was the owner in fee simple to the lands herein sued for by virtue of a deed of conveyance to him from said Peter McGrael, plaintiff in said suit, executed and delivered on August 9, 1848, and that at no time since said date had said Peter McGrael any title or interest in the lands in controversy. Attached to plaintiffs' said petition was a certified copy of the record in the case of *Peter McGrael* v. *Stuart Newell* in the district court of Brazoria County, Texas, to which was attached the certificate of the clerk that said record contained a full, true and correct copy of all the proceedings had in said suit, and which record was afterwards put in evidence on the trial by defendant.

"This record consisted of, 1st, a petition in the ordinary form of trespass to try title, in which Peter McGrael was plaintiff and Stuart Newell was defendant, and in which petition it was alleged that Peter McGrael was a resident citizen of the county of Brazoria, State of Texas, and that Stuart Newell was a resident citizen of the county of Brazoria, State of Texas. A number of different tracts of land, one of which was situated in Brazoria County, were described in said petition, among them the land in controversy, which was alleged to be situated, then as now, in Harris County, Texas. Said petition likewise contained a prayer that Stuart

Newell be cited to appear before the next term of the said district court of said Brazoria County, and that he be condemned to restore to plaintiff the peaceable possession of. the said lands, and that he and all other persons be thereafter restrained from disturbing plaintiff in the possession and use thereof, and that defendant be condemned to pay plaintiff five thousand dollars damages for taking possession of said tracts of land, and also be condemned to pay a reasonable rent for the same. Prayer was likewise made for general relief, and that plaintiff be quieted in his title and possession of the said land. This petition was filed on the 20th day of May, 1850, and contained the following indorsement: 'This suit is brought as well to try title as for damages. J. B. Jones, att'y for plaintiff.'

"2d. The following answer, filed May 20, 1850, viz.:

"'In the Honorable District Court, May Term, A.D. 1850.

Peter McGrael
*v.*
Stuart Newell.

"' And now comes the defendant, Stuart Newell, and says that the matters and things in plaintiff's petition are not sufficient in law for the. plaintiff to have or maintain his said action against this defendant. Wherefore he prays judgment.

(Signed)  J. A. SWETT,
*Att'y for Defendant.*

"' And now, at this term of your honorable court, comes the said defendant, Stuart Newell, and defends, etc., and says that he denies all and singular the allegations in said plaintiff's pe. tion contained.

(Signed)  J. A. SWETT,
*Att'y for Defendant.*

"' And for further answer in this behalf the said defendant says that he is not guilty in manner and form as the said plaintiff in his said petition hath complained against him; and of this he puts himself upon the country.

(Signed)  J. A. SWETT,
*Att'y for Defendant.*'

" 3d. The following order of court:

> 'Peter McGrael
>      *v.*          } No. 1527.
> Stuart Newell.

MONDAY, *May* 20, 1850.

" ' In this cause both parties being present, by their attorneys, the demurrer of defendant to plaintiff's petition came on and, being heard by the court, was overruled.'

"4th. The following decree:

> " ' Peter McGrael
>        *v.*          } No. 1527.
> Stuart Newell.

TUESDAY, *May* 21, 1850.

" ' This day came the parties, by their attorneys, and the demurrer of the defendant being heard, the same was overruled; and thereupon came the following jury of good and lawful men, to wit (here follow names of the jurors), who, after hearing the evidence and argument, thereupon returned the following verdict:

" ' We, the jury, find for the plaintiff, and that he recover the several tracts of land mentioned and described in the petition.

> E. GIESECKE, *Foreman.*

" ' It is therefore ordered, adjudged and decreed by the court that the plaintiff do have and recover of and from the defendant the several tracts of land in plaintiff's petition mentioned and described and all thereof; that the said Stuart Newell be forever barred from having or asserting any claim, right or title to all or any portion of said tracts of land or any part thereof, and that the said plaintiff be forever quieted in the title and in the possession of all the aforesaid tracts of land. It is further considered by the court that the plaintiff recover of the defendant his costs of this suit, and that execution issue for the same.'

" The defendants answered herein, demurring to the plaintiffs' fifth amended original petition upon the ground that it appeared therefrom that the plaintiffs thereby attacked col-

laterally and alleged to be void the judgment of the district court of Brazoria County, in the State of Texas, and within the said Eastern District thereof, a court of general jurisdiction of the parties and the subject-matter connected with and involved in said judgment, and that said judgment was a domestic judgment, assailable only in a direct proceeding to impeach it, and that no proceeding had ever been taken to review, appeal from, vacate or qualify said judgment, and that plaintiffs' right to do so is now barred by limitation and lost by laches. Defendants also answered by plea of not guilty and the statute of limitation of three, five and ten years.

"Upon the trial of the case in the Circuit Court there was evidence offered by the plaintiffs tending to prove that Peter McGrael was the common source of title, and that, as alleged in plaintiffs' petition, the land in controversy had been conveyed by said Peter McGrael to said Stuart Newell in fee simple in 1848, and that said Stuart Newell was not a citizen nor a resident of the State of Texas at the time of the institution of the aforesaid suit of Peter McGrael v. said Stuart Newell in the district court of Brazoria County, Texas; that he was never served with any process of any character in said suit; that he had no knowledge of the institution of the said suit until many years thereafter; that J. A. Swett was not his attorney in said suit and had never been employed by him to represent him in said suit, and that any appearance made for him by said Swett in said suit was without the knowledge or consent of said Newell; that in said suit the property in controversy had not been taken into the possession of the court by attachment, sequestration or other process; that said Stuart Newell had never resided in Brazoria County, Texas; that he resided in Texas, in Galveston County, from April, 1838, to November, 1848; that he left Texas in November, 1848, and went to the city of Philadelphia, and resided there until 1853 or 1854, and from that time on up to the date of his death he had resided in the city of New York, in the State of New York, and during said years was first a citizen of the State of Pennsylvania whilst residing

there, and then a citizen of the State of New York whilst residing there.

"The evidence tending to establish the above facts was all objected to by the defendants upon the ground that said judgment in the case of *Peter McGrael* v. *Stuart Newell* was rendered by a domestic court of general jurisdiction, and that said Newell was sued as a citizen of said Brazoria County, and that the record in said suit showed that fact and showed that he was sued therein for the recovery of land, and that he had appeared by his attorney, demurred, pleaded and answered in the suit, and that his demurrer had been contested before the court and a hearing had on the case before a jury and that judgment was rendered in said suit for the plaintiff, and that said proceeding, judgment and record import absolute verity, and that want of jurisdiction in said court could not be established outside of said record in a collateral proceeding such as the suit at bar.

"These objections were overruled, the evidence admitted, and defendants excepted thereto.

"The issue of the validity of said judgment in the case of *Peter McGrael* v. *Stuart Newell* was submitted to the jury by the following charge of the court, viz.:

"'There are only two questions left to your consideration: First, whether or not the judgment rendered in Brazoria County May 21, 1850, in favor of Peter McGrael against Stuart Newell was procured without service and without the authorized appearance of Stuart Newell. If the evidence satisfies your mind that Stuart Newell was not a party to the suit in fact — that is, was not served and did not enter his personal appearance, and did not authorize Mr. Swett to appear for him — you are instructed that the judgment is a nullity and the plaintiffs are entitled to recover this land, unless defendants have it by statute of limitations. If you determine from the testimony in this case that Stuart Newell was represented in that suit by Mr. Swett and he was authorized to represent him, in that event you need not consider the plea of limitation, but return a verdict for the defendants. If Mr. Swett was authorized to appear for Stuart Newell in the

litigation, you need not consider the plea of limitation, but return a verdict for the defendants; but if you find from the testimony that Mr. Swett was not authorized to appear for him, then that judgment is a nullity and the title to this property would be in the executors of Stuart Newell, plaintiffs in this case, unless you find under the plea of limitation which I shall instruct you upon in favor of the defendants. If you find for the plaintiffs, the form of your verdict will be, "We, the jury, find for the plaintiffs against the defendants." If you find for the defendants, the form of your verdict should be, "We, the jury, find for the defendants the land described in the plaintiffs' petition and against the plaintiffs;" and in that event you are further directed to state whether or not you find the Brazoria County judgment was a valid or void judgment, and you will also state whether you find the defendants have title to the property by limitation; and, if so, you will add, "We, the jury, find the defendants have the title to the property by reason of the five years' limitation." Those are two special findings, if you find for the defendants. If you find from the evidence in this case that Stuart Newell authorized Mr. Swett to appear for him in that case, the judgment is valid, but if you find he was not authorized to appear for him, then the judgment is a nullity. The burden of proof is upon the plaintiffs to show nullity of the judgment in Brazoria County.'

"To this charge of the court the defendants duly excepted and asked the court to give to the jury the following instructions:

"'The judgment of the district court of Brazoria County, rendered on May 21, 1850, in the case of *Peter McGrael* v. *Stuart Newell,* put the title to the land now sued for in said McGrael, and McGrael's deed to Westrope on March 2, 1860, put the title in Westrope, and defendants are entitled to your verdict, and you will find for them.'

"This instruction the court refused to give, and to this action of the court defendants duly excepted. The jury brought in the following verdict: 'We, the jury, find for the plaintiffs, as against the defendants, the lands described

in plaintiffs' petition;' which verdict was duly received and upon it judgment rendered for plaintiffs.

"The defendants in time filed their bills of exception, and this case was brought to this court by writ of error. Among other assignments of error it was complained that the Circuit Court had erred in overruling defendants' demurrer to plaintiffs' petition attacking the validity of said judgment in the case of *Peter McGrael* v. *Stuart Newell* and in permitting the introduction of the evidence hereinbefore recited and in charging the jury as hereinbefore recited and in refusing to charge the jury as hereinbefore recited.

"Whereupon, the court desiring the instruction of the honorable Supreme Court of the United States for the proper decision of the questions arising on the record, it is ordered that the following question be certified to the honorable the Supreme Court of the United States, in accordance with the provisions of section 6 of the act entitled 'An act to establish Circuit Courts of Appeals and to define and regulate in certain cases the juridiction of the Circuit Courts of the United States, and for other purposes, approved March 3, 1891,' to wit:

"Was the judgment of the district court of Brazoria County, Texas, (said court being a court of general jurisdiction,) in the case of *Peter McGrael* v. *Stuart Newell*, subject to collateral attack in the United States Circuit Court for the Eastern District of Texas, sitting in the same territory in which said district court sat, in this suit, between a citizen of the State of New York and a citizen of the State of Texas, by evidence *aliunde*, the record of the state court showing that the defendant, Stuart Newell, in said suit in said state court was not a resident of the State of Texas at the time the suit was brought nor a citizen of said State, but a resident citizen of another State, and that he was not cited to appear in said suit, and that he did not have any knowledge of said suit, and that he did not, in fact, appear in said suit, and that he did not authorize J. A. Swett, the attorney who purported to appear for him in said suit, to make any such appearance, and that the appearance by said attorney was made without his knowledge or consent."

*Mr. F. Charles Hume* for Cooper and others.

No appearance for Newell.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court:

The question is whether the judgment entered by the district court of Brazoria County, Texas, in favor of McGrael and against Newell, was open to the attack made upon it in the Circuit Court of the United States for the Eastern District of Texas. The record of the suit in which that judgment was entered showed a petition in the ordinary form of trespass to try title, filed May 20, 1850, alleging McGrael and Newell to be resident citizens of the county of Brazoria, Texas, and describing several different tracts of land, one of which was situated in Brazoria County, and, among the others, the tract in controversy, which was alleged to be situated then as now in Harris County, Texas; a demurrer and pleas signed by a person as "att'y for defendant," filed the same day; a verdict and judgment against Newell rendered and entered May 21, 1850. The record does not show that any process was issued on the petition and served on Newell, or any notice given to Newell by publication or otherwise; or affirmatively that the person signing the demurrer and pleas was authorized to do so.

The evidence on the trial of the present case in the Circuit Court must be taken as establishing that Newell was not a citizen nor a resident of Texas at the time the suit was commenced in the Brazoria County district court; that he was never served with any process in that suit and had no knowledge of its institution until many years thereafter; that the person who signed the pleadings for defendant was not Newell's attorney and had never been employed by him to represent him, and that any appearance made for Newell in the suit was without his knowledge or consent; that in that suit the property in controversy was not taken into the possession of the court by attachment, sequestration or other process; that Newell had never resided in Brazoria County, Texas, though he had resided in Galveston County prior to Novem-

ber, 1848, when he went to the city of Philadelphia, and resided there until 1853 or 1854, when he removed to the city of New York, where he resided up to the date of his death in 1891; and that during the period from November, 1848, to 1891 he was first a citizen and resident of Pennsylvania and then a citizen and resident of New York. This evidence was objected to on the ground that the judgment was rendered by a domestic court of general jurisdiction, and that want of jurisdiction cannot be established *aliunde* the record in a collateral proceeding.

In *Thompson* v. *Whitman*, 18 Wall. 457, a leading case in this court, it was ruled that "neither the constitutional provision that full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State, nor the act of Congress passed in pursuance thereof, prevents an inquiry into the jurisdiction of the court by which a judgment offered in evidence was rendered;" that "the record of a judgment rendered in another State may be contradicted as to the facts necessary to give the court jurisdiction; and if it be shown that such facts did not exist, the record will be a nullity, notwithstanding it may recite that they did exist;" and that "want of jurisdiction may be shown either as to the subject-matter or the person, or, in proceedings *in rem*, as to the thing."

But while these propositions are conceded, it is insisted that the Circuit Court of the United States for the Eastern District of Texas was bound to treat this judgment rendered by one of the courts of the State of Texas as if it were strictly a domestic judgment drawn in question in one of those courts, and to hold that it therefore could not be assailed collaterally.

We are of opinion that this contention cannot be sustained, and that the courts of the United States sitting in Texas are no more shut out from examining into jurisdiction than if sitting elsewhere, or than the courts of another State. A domestic judgment is the judgment of a domestic court, and a domestic court is a court of a particular country or sovereignty. Undoubtedly the judgments of courts of the United States are domestic judgments of the Nation, while in the par-

ticular State in which rendered they are entitled to be regarded as on the same plane in many senses as judgments of the State; and so the judgments of the courts of the several States are not to be treated by each other or by the courts of the United States as in every sense foreign judgments. But the courts of the United States are tribunals of a different sovereignty, and exercise a distinct and independent jurisdiction from that exercised by the state courts, and this is true in respect of the courts of the several States as between each other. And the courts of the United States are bound to give to the judgments of the state courts the same faith and credit that the courts of one State are bound to give to the judgments of the courts of her sister States.

The same rule applies to each, and the question of jurisdiction is open to inquiry even when the judgment of the court of a State comes under consideration in a court of the United States, sitting in the same State. *Christmas* v. *Russell*, 5 Wall. 290; *Galpin* v. *Page*, 18 Wall. 350; *Pennoyer* v. *Neff*, 95 U. S. 714; *Hart* v. *Sansom*, 110 U. S. 151; *Goldey* v. *Morning News*, 156 U. S. 518.

In *Pennoyer* v. *Neff*, Mr. Justice Field, after discussing the question how far a judgment rendered against a non-resident, without any service upon him, or his personal appearance, was entitled to any force in the State in which it was rendered, said : "Be that as it may, the courts of the United States are not required to give effect to judgments of this character when any right is claimed under them. Whilst they are not foreign tribunals in their relations to the state courts, they are tribunals of a different sovereignty, exercising a distinct and independent jurisdiction, and are bound to give to the judgments of the state courts only the same faith and credit which the courts of another State are bound to give to them." 95 U. S. 732.

And in *Goldey* v. *Morning News*, 156 U. S. 518, 521, where the authorities are extensively cited, Mr. Justice Gray said : "It is an elementary principle of jurisprudence, that a court of justice cannot acquire jurisdiction over the person of one who has no residence within its territorial jurisdiction, except

by actual service of notice within the jurisdiction upon him or upon some one authorized to accept service in his behalf, or by his waiver, by general appearance or otherwise, of the want of due service. Whatever effect a constructive service may be allowed in the courts of the same government, it cannot be recognized as valid by the courts of any other government. . . . For example, under the provisions of the Constitution of the United States and the acts of Congress, by which judgments of the courts of one State are to be given full faith and credit in the courts of another State, or of the United States, such a judgment is not entitled to any force or effect, unless the defendant was duly served with notice of the action in which the judgment was rendered, or waived the want of such notice. . . . If a judgment is rendered in one State against two partners jointly, after serving notice upon one of them only, under a statute of the State providing that such service shall be sufficient to authorize a judgment against both, yet the judgment is of no force or effect in a court of another State, or in a court of the United States, against the partner who was not served with process. . . . So a judgment rendered in a court of one State, against a corporation neither incorporated nor doing business within the State, must be regarded as of no validity in the courts of another State, or of the United States, unless service of process was made in the first State upon an agent appointed to act there for the corporation, and not merely upon an officer or agent residing in another State, and only casually within the State, and not charged with any business of the corporation there. . . . The principle which governs the effect of judgments of one State in the courts of another State is equally applicable in the Circuit Courts of the United States, although sitting in the State in which the judgment was rendered. In either case, the court the service of whose process is in question, and the court in which the effect of that service is to be determined, derive their jurisdiction and authority from different governments."

It must be remembered that this action was commenced by Newell as a citizen of New York against citizens of Texas, in

the exercise of a right secured to him by the Constitution of the United States, and it would go far to defeat that right if it should be held that he was cut off in the Circuit Court from proving that he was not a citizen and resident of Texas when the controverted action was commenced, and that he had not authorized any attorney to appear for him in that action. As any provisions by statute for the rendition of judgment against a person not a citizen or resident of a State, and not served with process or voluntarily appearing to an action against him therein, would not be according to the course of the common law, it must follow that he would be entitled to show that he was not such citizen or resident, and had not been served or appeared by himself or attorney.

Accordingly, it was held in *Needham* v. *Thayer*, 147 Mass. 536, that a defendant in an action brought in Massachusetts on a judgment *in personam* in that State, might set up in defence that he was at the time the original action was brought. a non-resident, and neither was served personally with process nor appeared therein.

And so in New York, when a judgment of a court of that State was drawn in question, which had been entered against a non-resident, who was not during the pendency of the proceedings within the jurisdiction of the State. *Vilas* v. *Plattsburgh and Montreal Railroad Company*, 123 N. Y. 440. There the rule that domestic judgments against a party not served, but for whom an attorney appeared without authority, cannot be attacked collaterally, was adhered to; yet the Court of Appeals declined to apply it to a case where the defendant was a non-resident and not within the jurisdiction during the pendency of the proceedings, such judgments being held to be not strictly domestic but to fall within the principle applicable to judgments of the courts of other States, in respect of which Andrews, J., delivering the opinion of the court, said: " It is well settled that in an action brought in our courts on a judgment of a court of a sister State the jurisdiction of the court to render the judgment may be assailed by proof that the defendant was not served and did not appear in the action, or where an appearance was entered by an attorney,

that the appearance was unauthorized, and this even where the proof directly contradicts the record."

We do not understand any different view to obtain in Texas. In *Fowler* v. *Morrill*, 8 Texas, 153, it was held that the acceptance of service of process by an attorney is only *prima facie* evidence of his authority. In *Parker* v. *Spencer*, 61 Texas, 155, the court decided that a judgment did not affect a party who had not been served, but who on the record appeared by an attorney not authorized to so appear, and it was said : " And as he had not been made a party to the suit by any of the modes known to the law, he could not be bound by the judgment. But he had the option either to have it vacated by direct proceeding or else to treat it as void in any collateral proceeding where rights might be asserted against him by reason of the same."

In *Bender* v. *Damon*, 72 Texas, 92, which is much in point, Chief Justice Stayton states the case as follows :

" The petition alleges substantially the facts necessary to be alleged in an action of trespass to try title, and the petition was so endorsed. Had it done this and no more, there could have been no ground for controversy in the court below as to its jurisdiction to hear and determine the cause, nor as to the sufficiency of the petition on general demurrer. The appellant, however, sought to remove cloud from his title, which a judgment in his favor in an action of trespass to try title would have accomplished as against the defendants, and to obtain this relief he undertook to show that appellees were claiming under a sheriff's sale and deed under an execution issued from the district court for Navarro County, on a judgment rendered by that court against him and in favor of S. J. T. Johnson, all of which he claimed were invalid.

" Some of the facts which he alleged to show the invalidity of that judgment, execution and sale, were such as might entitle him, by a proper proceeding, to have had them vacated, but not such as to render them void.

" The petition, however, went further, and alleged facts which, if true, would render the judgment void. It alleged that the plaintiff was a non-resident of this State ; that he

never was cited to appear, and did not appear in person or by attorney in the proceeding in which the judgment in favor of Johnson and against himself was rendered; and that appellees claimed through an execution and sale made under a judgment so rendered. If these averments be true the judgment was void, and no one could acquire rights under it."

We think the Circuit Court was clearly right in admitting evidence to contradict the recital that Newell was a citizen and resident of Texas, and to show that the attorney had no authority to represent him.

Nor can this judgment be held conclusive on the theory that the suit of *McGrael* v. *Newell* was in the nature of a proceeding *in rem*. The property was not taken into custody by attachment, or otherwise, and the suit depended entirely on the statutes of Texas providing the procedure for the trial of the title to real estate, which contained at that time no particular provision for bringing in non-residents of the State. There was a statute providing generally that in suits against non-residents service could be had by publication, and that statute provided that if the plaintiff, or his agent, or attorney, when the suit was instituted, or during its progress, made affidavit before the clerk of the court that defendant was not a resident of the State of Texas, or that he was absent from the State, or that he was a transient person, or that his residence was unknown, then a citation should issue which should be published in a newspaper. Acts Texas, 1848, 106, c. 95. This statute was applicable to all suits, and so far as actions against non-residents were personal, judgment on citation by publication would not be conclusive. And the law also required that where any judgment was rendered on service by publication, the court should make out and incorporate with the records of the case a statement of the facts proven therein on which the judgment was founded. Acts Texas, 1846, 395. It is true that "it was within the power of the legislature of Texas to provide for determining and quieting the title to real estate within the limits of the State and within the jurisdiction of the court, after actual notice to all known claimants, and notice by publication to all other persons." *Hamilton* v.

*Brown,* 161 U. S. 256, 274; *Arndt* v. *Griggs,* 134 U. S. 316. But it would seem that there was no such statute at the time of the commencement of the McGrael suit, and that suit could only be regarded as a personal action and coming within the rule laid down in *Pennoyer* v. *Neff,* 95 U. S. 714.

Moreover, the record in *McGrael* v. *Newell* shows that the suit was not brought as against a non-resident of the State, it being alleged in plaintiff's petition that defendant resided in Brazoria County, Texas. So that even if it were held that the statutes of the State, taken together, authorized suits of this character to be brought against non-residents as proceedings *in rem,* this cannot be asserted as to this suit; and it affirmatively appeared that no citation by publication could have been had. The citation prayed for was to be addressed to the proper officer of Brazoria County, to be served on defendant as a resident of that county; no citation by publication was asked for, and no record of the facts on which the case was tried was kept as required by statute, and the whole case was tried as a case against a resident of Brazoria County appearing by attorney. The statute at that time provided that "any party to a suit, his agent or attorney, may waive the necessity of the issuance or the service of any writ or process required to be served on him in the suit, and accept such service thereof; provided, that such waiver or acceptance shall be made in writing, signed by such party, his agent or attorney, and filed among the papers of the suit, as a record." Acts Texas, 1846, 367. The record here showed no such acceptance or waiver of service.

Treated as a personal action, brought as against a resident, when the facts appeared that defendant was not a resident of the State of Texas and was not served in that State, and had not appeared by attorney, then the judgment ceased to be binding. The result is the same if the suit were regarded as brought under a statute making provision for the bringing of suits to settle the title to lands in Texas, since that proceeding would have been purely statutory, and not according to the course of the common law, and the record did not show that it was instituted in the manner required by the statute, or ap-

pearance had or waived as required, or that the jurisdiction of the court in fact so attached as to authorize the court to render the judgment. *Galpin* v. *Page*, 18 Wall. 350.

It follows that the question propounded must be

*Answered in the affirmative.*