### BLUE GOOSE MINING CO. v. NORTHERN LIGHT MINING CO. *

(Circuit Court of Appeals, Ninth Circuit. October 15, 1917.)

No. 2880.

1. JUDGMENT ☞944—ACTIONS ON JUDGMENT—EVIDENCE—APPEARANCE.
    In an action on a foreign judgment, the record of the judgment, showing defendant's appearance by counsel, was prima facie evidence that the appearance was authorized.

2. TRIAL ☞60(1)—JUDGMENT AS EVIDENCE—PRELIMINARY EVIDENCE.
    In an action on a foreign judgment, the record of which showed service on defendant, and that defendant appeared and filed a demurrer and answer, the court did not err in refusing to receive evidence to prove want of jurisdiction preliminary to admitting the judgment in evidence, as this was properly affirmative defense, to be shown when defendant reached its case.

3. EVIDENCE ☞347—CERTIFIED COPIES—JUDICIAL RECORDS.
    In an action on a foreign judgment, certified copies of the record on appeal from such judgment, showing affirmance, were properly admitted.

4. JUDGMENT ☞538—WHEN FINAL—PENDENCY OF APPEAL.
    When appeal is taken under California practice, the action is still pending, and the judgment does not become final until the appellate court has passed its order.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied January 7, 1918.

5. JUDGMENT ⬳818(5)—FOREIGN JUDGMENT—IMPEACHING RECORD.

The recitals in the record of a foreign judgment against a foreign corporation may be assailed by proof that defendant was not served and did not appear, or that the appearance entered was unauthorized, even though such proof contradicts the record.

6. CORPORATIONS ⬳669—FOREIGN CORPORATIONS—ACTIONS—EFFECT OF APPEARANCE.

Where a foreign corporation voluntarily appears in an action against it, upon a judgment on a contract made in the state in which the appearance is had, it is immaterial whether or not it is engaged in business in the state, or has property therein, or has complied with the state statute requiring the designation of an agent upon whom service may be had.

7. CORPORATIONS ⬳407(2)—EMPLOYMENT OF ATTORNEY—AUTHORITY OF PRESIDENT.

The president of a corporation, who under its by-laws was the general executive officer, had power to employ counsel to defend an action against the corporation, unless forbidden to do so, though not directed by the directors to employ counsel or to appear.

8. CORPORATIONS ⬳407(2)—EMPLOYMENT OF ATTORNEY—AUTHORITY OF PRESIDENT.

By-laws of a corporation, providing that the president should be the general executive officer, and sign all contracts, and perform generally all duties usually appertaining to such office, and that he should have general charge (subject to the control of the board of directors) of the business affairs of the corporation, but should have no power, without the previous consent of the board of directors, to incur any debt in excess of $500, or to bind the corporation by any obligation involving a liability in excess of such sum, did not deprive the president of power to employ counsel to defend an action against the corporation, since, while his general charge of the business was subject to the control of the board, his power was not limited, unless the board took some action.

9. CORPORATIONS ⬳407(2)—EMPLOYMENT OF ATTORNEY—AUTHORITY OF PRESIDENT.

The president having authority to employ counsel by virtue of his general charge of the business of the corporation, the employment of counsel was not rendered invalid by the president's agreement to pay him more than $500.

In Error to the District Court of the United States for the Second Division of the District of Alaska; J. R. Tucker, Judge.

Action by the Northern Light Mining Company against the Blue Goose Mining Company. Judgment on a directed verdict for plaintiff, and defendant brings error. Affirmed.

A California corporation, the Northern Light Mining Company, defendant in error here, but called plaintiff, brought action in Alaska on a foreign judgment obtained against the Blue Goose Mining Company, an Alaska corporation, plaintiff in error here, to be called defendant, in the superior court within the state of California. The action arose out of contracts made in California. Judgment was ordered in favor of the Northern Light Mining Company on an instructed verdict, and by writ of error the Blue Goose Mining Comany brings the case here.

After alleging the institution of action against the defendants in the courts of California and the issuance of summons on June 2, 1911, it is set forth that summons was duly served on the Blue Goose Mining Company "personally" in San Francisco, California, by serving a copy, that the defendant duly appeared in the state court and filed its verified answer, and that thereafter, on March 22, 1912, judgment was given for $10,986.68 and interest, in favor of plaintiff and against defendant. The amended answer denies knowledge of the bringing

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of the action heretofore referred to, and denies that summons was ever served personally or otherwise upon it, or that it appeared, or that the state court ever had jurisdiction over the defendant to render any judgment. Defendant pleads that, when the action referred to was commenced in the state court and the judgment therein was rendered, the defendant was an Alaska corporation and resident in Alaska and not elsewhere; that it was not served with process, had no notice of the pendency of the alleged action in the state courts of California, never appeared therein, and at the time of the commencement of the alleged action, and the pretended service of summons and entering of judgment, it did not live within California, or have any agent or representative in that state authorized to accept service of process, or upon whom service of process could be made, and had no property or business in California, or within the jurisdiction of the superior court of California.

G. J. Lomen and O. D. Cochran, both of Nome, Alaska, and Metson, Drew & MacKenzie and E. H. Ryan, all of San Francisco, Cal., for plaintiff in error.

Ira D. Orton, of Seattle, Wash., and George B. Grigsby, of Juneau, Alaska (W. S. Andrews, of San Francisco, Cal., of counsel), for defendant in error.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

HUNT, Circuit Judge (after stating the facts as above). The vital point in the case is as to the jurisdiction of the state court of California to render the judgment which the Blue Goose Company complains of. The judgment roll in the state court recited that: W. S. Andrews, Esq., and A. H. Brandt, Esq., appeared as counsel for the plaintiff, and Messrs. Fink and White appeared on behalf of the defendant, and continued:

"It appearing to the court that the defendant had been regularly served with a copy of the summons and complaint in said cause in the city and county of San Francisco, state of California, and that the defendant had duly appeared, by filing a demurrer and answer in said action, and had not objected to the jurisdiction of said court, the court proceeded to hear the said cause. * * * That the defendant is, and at all time involved herein was, a corporation organized and existing by virtue of the laws of the district of Alaska."

[1, 2] Unquestionably the record of the judgment of the superior court of California that defendant appeared by counsel was prima facie evidence that the appearance of counsel was authorized. 23 Cyc. 1581; Kline v. Insurance Co., 80 Wash. 609, 142 Pac. 7. Defendant, however, complains because, when plaintiff offered the judgment, the court declined to receive evidence offered by it to prove the want of jurisdiction in the state court preliminary to admitting the judgment in evidence. We do not perceive that the court was in error in so ruling. The plaintiff, having to make a prima facie case, met the demand by the introduction of the judgment roll. Until the defendant advanced to its case the court was not obliged to permit the defendant to refute the prima facie case by the introduction of matter which was properly affirmative defense. 38 Cyc. 1352.

[3, 4] Nor was there error in the action of the court in permitting the certified copies of the record on appeal from the judgment, which appeal appears to have been taken from the superior to a higher court

in the state. The rule of practice is that, when an appeal is taken, the action is still pending, and the judgment does not become final until the appellate court has passed its order. Affirmance of the judgment was had on August 7, 1917. Code Civ. Proc. Cal. § 1049; Sewell v. Price, 164 Cal. 270, 128 Pac. 407.

[5-7] There can be no successful dispute over the argument that the recitals in the record of a judgment given in one state against a foreign corporation may be assailed by proof that the defendant was not served and did not appear in the action, or that where an appearance has been entered by an attorney that the appearance was unauthorized, and that such proof is proper even where it contradicts the record. Cooper v. Newell, 173 U. S. 555, 19 Sup. Ct. 506, 43 L. Ed. 808. But these contentions are for the larger part inapposite in this case, for here it is conceded, and correctly, too, that the record showing that counsel did appear in the action in the state court, filed demurrer, then an answer, acted for the corporation at the trial, and until after judgment was rendered made a prima facie case of authority of counsel to appear. Here, inasmuch as the evidence shows without dispute that the president employed such counsel to represent the corporation in the action in California, it is plain that if, in employing them, he did not exceed his authority as president, then the case resolves itself into one where the corporation voluntarily appeared; and, if that is found to be correct, it would be immaterial whether or not the corporation was engaged in business in California, or had property therein, or had complied with the state statute requiring the corporation to designate an agent in the state upon whom service might be had. We say this because we think it logically follows the indisputable proposition that a corporation of one state may by its legally constituted board of directors adopt a resolution directing the president of the company to employ attorneys to represent it in a suit against it in another state, and that such action may be had without regard to the question of ownership of property or doing of business where the suit is pending.

Accepting this general rule, the inquiry here is at once narrowed to determining whether, by virtue of his official relationship to the corporation and under his authority conferred by the by-laws, the president could employ counsel to appear in behalf of the company. Our conclusion is that Lindeberg, as the "general executive of the corporation" as president, had power to employ counsel to defend the corporation unless forbidden to do so. Beebe v. Beebe Co., 64 N. J. Law, 497, 46 Atl. 169. If the court had permitted the defendants to prove by the minutes of the directors' meeting that there was no direction on the part of the directors to employ counsel or to appear, it would not affect the question, because the minutes of the corporation failed to show that the directors ever took any action whatsoever in the matter of the suit in the California courts. Had defendants offered to prove the expression of a positive or express direction not to employ counsel, or that there was a general direction to the president to take no steps to defend any action brought against the company, and the court had rejected such offer, clearly it would have been error. But, the rule being that the president of a corporation, with general executive au-

thority, has authority to employ counsel to appear in defense of an action against his corporation, and to manage the defense, omission to confer such authority is immaterial. Winfield Trust Co. v. Robinson, 89 Kan. 842, 132 Pac. 979, Ann. Cas. 1915A, 451.

[8] It is said, however, that the by-laws which were offered by defendant negative such power in the present case as the president assumed to exercise. The by-laws seem to us to affirm rather that to deny the general implied power. They provide that:

"The president shall be the general executive officer of the corporation, * * * shall sign all stock certificates and written contracts of the corporation, and perform generally all the duties usually appertaining to the office of president of a corporation. He shall have general charge (subject to the control of the board of directors) of the business affairs of the corporation, may sign and indorse bonds, bills, checks, and promissory notes on behalf of the corporation, and may borrow money in its name; but he shall have no power without the previous consent of the board of directors to incur any debt on behalf of the corporation in excess of the sum of five hundred dollars, or without such consent to bind the corporation by any obligation involving a liability in excess of said sum. He shall at all times keep the directors advised as to the affairs of the corporation."

Of course, the "general charge" of the business vested in the president was subject to the control of the board of directors. But, unless the directors otherwise provided or took some action in the matter, there was no subtraction from the power of the president, with managing authority, to employ counsel to defend the suit against the corporation. As more or less pertinent to the questions involved we cite: Knowles v. Gaslight & Coke Co., 19 Wall. (86 U. S.) 58, 22 L. Ed. 70; Moulin v. Insurance Co., 24 N. J. Law, 222; Moulin v. Insurance Co., 25 N. J. Law, 57; National Condensed Milk Co. v. Brandenburgh, 40 N. J. Law, 111; Colorado Iron Works v. Sierra Grande Mining Co., 15 Colo. 499, 25 Pac. 325, 22 Am. St. Rep. 433.

[9] In his testimony the president said that he paid $1,000 to the attorneys employed by him, payment being made out of the funds of the Pioneer Mining Company, and that afterwards this sum was charged to the account of the Blue Goose Mining Company. It is urged that in agreeing to pay more than $500 without the previous consent of the board the president had exceeded his power under the by-law heretofore quoted. But, if we are right in the view that the president had authority to employ counsel in his "general charge of the business" of the corporation, the fact that he had agreed to pay counsel more than $500 would not make the employment invalid.

As these views lead to an affirmance of the judgment, it is unnecessary to consider whether there was a ratification of the act of the president.

Affirmed.