**Paraskevas PERDIKOURIS, Libellant-Petitioner,**

v.

**THE Liberian S/S OLYMPOS, her boats, tackle, apparel, etc.; C. Baegleris, heretofore designated as John Doe, a nonresident, individually and as master; Monovar Compania Navegacion, S.A., and Coulouthros, Ltd., both foreign corporations or associations, as owners and/or operators of the Liberian S/S Olympos, Respondents.**

**No. 440.**

United States District Court
E. D. Virginia,
Newport News Division.

July 12, 1960.

Burt M. Morewitz, Newport News, Va., for petitioner.

Walter B. Martin, Jr., Norfolk, Va., for respondents.

WALTER E. HOFFMAN, District Judge.

Before the Court for consideration is a plea of accord and satisfaction interposed by respondents. The original libel alleges four causes of action which, briefly summarized, may be characterized as (1) a claim for earned wages, including overtime and vacation pay, (2) a claim for "waiting time" pursuant to 46 U.S. C.A. § 596, § 597, (3) a claim for personal injuries occasioned by alleged negligence and unseaworthiness of the vessel on November 24, 1957, when libellant fell down a ladder, and (4) a claim for maintenance and cure.

On or about November 27, 1957, proctors for libellant notified respondents of their representation of libellant's interest. No action was filed, however, until July 3, 1958.

Following his injury at sea libellant was taken to the United States Public Health Service Hospital at Norfolk on November 28, 1957, where he remained until December 12, 1957, when he was discharged with the following comment:

"Not fit for duty. Fit for travel. Probably fit for duty in two to four weeks and may be examined at this facility at that time if desired."

Libellant, a Greek seaman employed aboard a Liberian flag vessel operated by a foreign corporation or corporations, was thereafter transported to Greece where he was treated from January 8, 1958, until the early part of March at the expense of the shipowner or its underwriter. On January 31, 1958, libellant received 2,000 drachmas on account of his claim; this being the equivalent of approximately $66.67. There is no contention that libellant's signature to the receipt of this sum constitutes a release.

On or about March 11, 1958, libellant visited the office of the attorneys for the shipowner in Athens, Greece, in accordance with written instructions furnished libellant by the attending physician, the latter's services having been made available by the shipowner's insurance carrier. Libellant requested another advance from the attorney, Daniolos, who replied that the advance would be given but that libellant would be required to sign and accompany two attorneys, Kairis and Gozadinos, to another place. On this same day libellant was introduced to Gozadinos, an attorney who at one time was associated with Daniolos and who thereafter frequently handled cases in conjunction with Daniolos, either as an opponent or associate. Gozadinos happened to be in the office of Daniolos awaiting his turn to confer as to other pending litigation when he was introduced to libellant.

It is apparent that Gozadinos made no independent investigation as to the merits of libellant's claim against the shipowners. On the following day, March 12, 1958, Kairis, representing the shipowner, Gozadinos, representing the libellant, and the libellant visited the office of a Justice of Peace and the following document was signed by libellant, the attorneys, the Clerk, and the Justice of Peace:

"Number 1392

"Compromise Act
"At Athens, today, March 12th, 1958, Wednesday, at 12:00 o'clock before me, John Ninios, Justice of the Peace in Athens, and in the presence of the Clerk, John Alexios, appeared Nicholas Th. Kairis, attorney, resident of Athens, (attorney's identification card No. 4057/58) acting in the present instance as attorney-in-fact of the owners of the cargo ship OLYMPOS, under the Liberian flag, and Paraskevas George Perdikouris, resident                 carrying seaman's registration papers No. 1844 A., appearing together with his representative attorney Emmanuel Gozadinos (attorney's identification card No. 2647/57) resident of Athens, and they declared the following:

"Paraskevas G. Perdikouris declared that, having served on the above mentioned ship as oiler, for total monthly wages of £57.10.0, suf-

fered, because of an accident during the performance of his duties and at the time he was working in the engine room of the above mentioned ship, metatraumatic arthritis of the right knee joint with dropsy. That having been discharged from the ship at Norfolk on 11–26–1957 in order to continue his treatment, which he had also undergone before his discharge, he was admitted to a hospital where he was treated at the expense of the owners of the ship. Afterwards, he arrived in Greece where it was necessary for him to receive further treatment for some time for a complete cure. That his treatment for the above mentioned reasons and his temporary total disability to work from the time of his discharge to the time of full restoration of his health and his ability to work lasted for three months in all; he admits that his health has been fully restored and that he is today in every respect healthy and able to perform his work to his knowledge and according to the assurance of his own specialist doctors (orthopedic) whom he consulted, and that he was left with no disability whatsoever. Consequently, that he is entitled, in accordance with the law 551 (regarding workers who suffered accidents), as the said law is in force today, to receive as compensation one-half of his monthly wages for the above mentioned period of 3 months, viz:

£57.10.0 x 3 : 2=£86.5.0 or Drachmas 7.201.

"Out of this sum of money, Paraskevas G. Perdikouris admits that he has received from the owners of the aforesaid ship and at various times as an advance payment Drachmas 2.000—and consequently there is left for him to receive Drachmas 5.201.—in full payment.

"Nicholas Th. Kairis under his above mentioned capacity declared that he denies all of the contentions of Paraskevas G. Perdikouris, and especially those having reference to the duration of his treatment and his temporary disability due to the accident; however, in order to avoid legal contests, he is offering to pay Paraskevas G. Perdikouris the above sum of Drachmas 5.201.—in full and final payment of all claims of his arising out of the above mentioned cause.

"I, the Justice of the Peace, approve this settlement as just and reasonable and satisfying the claims of the worker in full. Thereafter, the attorney-in-fact of the owners of the above mentioned ship, Mr. Th. Kairis, paid in our presence in cash the above mentioned amount of Drachmas five thousand two hundred and one (5.201.—) to Paraskevas G. Perdikouris who received the same in full payment and stated that his accident was casual and that it was not due to a mechanical defect or other want of the ship and its equipment, nor to negligence or other fault of the captain or any other member of the crew, or of the ship owners or ship's agents or to violations of the laws and regulations set for the safety of the workers and that he relinquishes unreservedly the right to file suit before any Greek or Foreign Court, or any such suit which may have been filed before American Courts and relinquishes unreservedly the writ and right therefrom, and that in any event recalls any authority given to any attorney in this country or abroad to prosecute his claim, and that he fully and completely discharges the owners, the ship agents and managers and captain of the above mentioned ship, as well as its insurance underwriters and, in general, any person responsible due to the above cause in accordance with the provisions of the Law 551 of the Civil Code, the Commercial Law and any other foreign law.

"It is mentioned here that a special revenue stamp of Drachmas 73 has been affixed for stamp duty.

"In witness whereof these presents were drawn up; they were read and, having been confirmed were lawfully signed

"The Justice of the Peace

The Principals The Clerk."

Obviously libellant had not attained his maximum cure as of March 12, 1958. According to an orthopedic surgeon libellant was, as of August, 1958, approximately 70% disabled in the performance of his duties as a seaman. It is conceded that the Justice of Peace would not have approved the settlement had he known that libellant had not been cured. According to the laws of Greece, a Justice of Peace is a proper judicial officer to approve settlements.

The approved compromise is the equivalent of $237.63 and libellant received approximately $170.96 on the date of settlement; the sum of $66.67 having been previously advanced to him on January 31, 1958. Subsequent to March 12, 1958, respondent made no further payments for medical and hospital treatment, although he incurred medical expense approximating $83, and his physician indicated additional required medical expense in the sum of $750 to $1,000. The compromise, as noted, does not purport to settle any claim for wages, but does contemplate extinguishing libellant's claim for personal injuries, as well as maintenance and cure.

While libellant urges that he did not read the settlement executed by him due to his lack of education, the determination as to the validity of the compromise need not turn upon this point. The circumstances surrounding the employment of counsel for libellant and the hasty preparation of papers lead to the conclusion that libellant could not have fully understood his rights and the legal effect of such a proceeding. Admittedly he was in the hands of an attorney friendly to the shipowner.

█ If this settlement had been approved by a court of competent jurisdiction in the United States, it would be entitled to full faith and credit in the absence of any showing of fraud perpetrated upon the court in securing the order approving the settlement. Thornell v. Chesapeake & Ohio Railway Company, D. C.W.D.Mich., 166 F.Supp. 61; Cooper v. Newell, 173 U.S. 555, 567, 19 S.Ct. 506, 43 L.Ed. 808. However, full faith and credit does not require us to recognize the binding effect of judgments of foreign countries, although, in some cases, the doctrine of reciprocity is acknowledged. Aetna Life Ins. Co. v. Tremblay, 223 U.S. 185, 32 S.Ct. 309, 56 L.Ed. 398. Certainly as to judgments of foreign countries touching the rights of seamen represented by attorneys in this country, any reciprocity should be applied with caution and, in this case, there is no suggestion of reciprocity although the same may exist. We believe, therefore, that the effect of a judgment or decree of a foreign country in seamen's cases should carry with it all of the burdens imposed upon the employer by the laws of the United States and as stated in Garrett v. Moore-McCormack Co., Inc., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239, when such judgment or decree has the effect of settling the rights of a seaman who is represented by an attorney in the United States and such fact is known by the employer-shipowner.

█ Applying the principles in Garrett, supra, and considering the inadequacy of the consideration, the mistaken belief that libellant was cured, the circumstances surrounding the legal advice made available to libellant, and libellant's lack of full understanding of his rights, we reach the conclusion that respondent's plea of accord and satisfaction must be overruled, the release of respondent's obligation set aside, and the matter proceed to trial with the amount of any settlement heretofore made to be credited upon such recovery, if any, as may be in excess of the total amount paid by way of compromise.