INDAG, S.A. and Jamiltrade, S.A., Plaintiffs,

v.

IRRIDELCO CORPORATION and Irridelco International Corporation, Defendants.

No. 86 CIV. 3139 (PKL).

United States District Court, S.D. New York.

April 22, 1987.

As Corrected May 15, 1987.

Windels, Mark, Davies & Ives, New York City (Daniel V. Duff, Jr., of counsel), for plaintiffs.

Dorsey & Whitney, New York City (Stephen B. Camhi, of counsel), for defendants.

## CORRECTED OPINION AND ORDER

LEISURE, District Judge:

This is an action to enforce a judgment entered in favor of plaintiffs (hereinafter referred to collectively as "Indag") by the courts of Switzerland. A judgment of the Cantonal Court of Vaud was entered on June 12, 1985, and was affirmed on appeal by the Federal Court of Switzerland on November 25, 1985, with costs on appeal assessed against defendants (hereinafter referred to collectively as "Irridelco"). No part of the Swiss judgment has been paid to plaintiffs. It is undisputed that the Swiss judgment is valid and entitled to enforcement by this Court under the law of New York. *See* Defendants' Rule 3(g) Statement, ¶ 10. The only issues remaining to be determined on plaintiffs' motion for summary judgment involve the conversion of Irridelco's obligation from Swiss francs into United States dollars.

*Discussion*

■ The primary issue in dispute concerns the selection of the appropriate date for conversion of the Swiss currency debt into dollars. This is a "substantive question" on which the Court is "compelled to apply New York law." *Competex, S.A. v. Labow*, 783 F.2d 333, 334 (2d Cir.1986); *see also Vishipco Line v. Chase Manhattan Bank, N.A.*, 660 F.2d 854, 865–67 (2d Cir. 1981), *cert. denied*, 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982). New York uses the breach-day conversion rule, entitling a plaintiff to recover an amount in dollars which reflects the exchange rate between dollars and the relevant foreign currency at the time of breach, plus statutory interest. *Vishipco*, 660 F.2d at 865; *Competex*, 783 F.2d at 334. The parties accept the relevance of the breach-day rule, but differ in its application to this case. Plaintiffs have adopted the view of the late Judge Henry F. Werker in *Competex*, 81 Civ. 2550 (S.D. N.Y. Oct. 17, 1983). As explained by the Court of Appeals for the Second Circuit in an opinion implicitly approving his view[1],

[i]n applying the breach-day rule, Judge Werker reasoned that [plaintiff's] American claim was based on the [foreign] judgment rather than on the underlying contract. [Plaintiff's] American claim had therefore accrued upon the date of entry of the English judgment, and Judge Werker applied the conversion rate prevailing on that date. . . .

*Competex*, 783 F.2d at 334. In contrast, defendants portray plaintiffs' claim as based on Irridelco's breach of its underlying obligation, *i.e.* its agreement to repay certain notes. Irridelco's Memorandum of Law in Opposition to Indag's Motion at 11, 13 (hereinafter referred to as "Defendants' Memorandum"). Defendants thus argue that the conversion rates prevailing on the

---

1. *See infra* pp. 765–66. The *Competex* Court was not reviewing Judge Werker's decision, but rather Judge Sprizzo's subsequent order denying a motion by defendant seeking relief from Judge Werker's opinion under Fed.R.Civ.P. 60(b). 783 F.2d at 334, 339. The Court noted that defendant could not, on the Rule 60(b)

motion, challenge Judge Werker's appliction of the breach-day rule. *Id.* at 335. However, the Court's treatment of its own hypothetical example was in accordance with Judge Werker's view that a foreign judgment debt, not an underlying contractual obligation, is primary in the context of an enforcement action. *Id.* at 335 & n. 3.

dates of default on the notes are controlling. *Id.* at 10.

In support of their position, defendants seek to resurrect litigation in New York state courts which preceded plaintiffs' resort to the Swiss courts. Briefly, the history of that litigation, which began in 1972, is as follows. *See* Affidavit of Stephen B. Camhi, Esq., sworn to on January 22, 1987, at 4–7. Indag sought to collect on the notes by bringing a motion for summary judgment in lieu of a complaint. When the New York Supreme Court found that certain factual issues precluded the use of that procedure, Indag tried, unsuccessfully, to discontinue its action. To assert what were essentially counterclaims, Irridelco then brought suit against Indag in the Supreme Court. The Appellate Division granted Indag's motion to dismiss on the ground of *forum non conveniens,* and the New York Court of Appeals affirmed. *See Irrigation & Industrial Development Corp. v. Indag S.A.,* 37 N.Y.2d 522, 375 N.Y.S.2d 296, 337 N.E.2d 749 (1975). In opposition to plaintiffs' motion for summary judgment in the instant enforcement action, defendants assert that as a result of the prior New York litigation, Indag's claims were simply "transfer[red]" to Switzerland for pre-trial proceedings and a trial. *See, e.g.,* Defendants' Memorandum at 17. In other words, defendants portray a continuous litigation in which the Swiss courts merely suited the parties' convenience and in which the Swiss judgment now remains subordinate to plaintiffs' underlying contract claims. A similar characterization was recently rejected by the Second Circuit. *See In re Union Carbide Corp. Gas Plant Disaster,* 809 F.2d 195, 205 (2d Cir.1987).

■ In *Union Carbide,* defendant asserted that the District Court, after dismissing the case on *forum non conveniens*

grounds, should have retained the authority to monitor subsequent foreign court proceedings. *Id.* at 204–05. The Second Circuit, however, explained that once a district court dismisses the proceedings before it on grounds of *forum non conveniens,* "it ceases to have any further jurisdiction over the matter unless and until a proceeding may some day be brought to enforce here a final and conclusive [foreign] money judgment.... The concept of shared jurisdictions is both illusory and unrealistic." *Id.* at 205. Similarly, the New York courts ceased to have jurisdiction over the instant controversy when defendants' complaint was dismissed under N.Y.Civ.Prac.L. & R. 327 (McKinney 1987). *See Indag S.A.,* 37 N.Y.2d at 525, 375 N.Y.S.2d at 298, 337 N.E.2d at 750; *see also Islamic Republic of Iran v. Pahlavi,* 62 N.Y.2d 474, 478–79, 484, 478 N.Y.S.2d 597, 599, 602, 467 N.E.2d 245, 247, 250 (1984), *cert. denied,* 469 U.S. 1108, 105 S.Ct. 783, 83 L.Ed.2d 778 (1985). Plaintiffs' Swiss action was entirely separate and distinct from the prior litigation in New York, and the Swiss judgment is now superordinate to plaintiffs' New York claims. *Cf. Competex,* 783 F.2d at 337. Accordingly, the date of entry of the Swiss judgment is controlling.

This conclusion is fully consistent with the Second Circuit's "exploration of the currency conversion problem" in *Competex.* 783 F.2d at 335.[2] In an illustrative example which nearly duplicates the circumstances of this case,[3] the *Competex* Court explained that

[i]f the [foreign] judgment is entitled to enforcement, a state court applying New York's breach-day rule would enter judgment ... in accordance with the conversion rate prevailing on the date the [foreign] judgment debt became due. The asserted purpose of this rule is to assure

---

2. *See supra* note 1. The Court explained that "review of the Rule 60(b) denial requires some exploration of the currency conversion problem because determination of a state's rule for deeming enforcing judgments satisfied turns on the rationale for the state's currency conversion rule." 783 F.2d at 335.

3. The Court posed the following example. "Defendant defaults on a contractual obligation to pay plaintiff [one pound]. Plaintiff brings suit in an English court and receives judgment for that amount, at which time the prevailing conversion rate is: [one pound] = $1.... Plaintiff then brings an action *on the English judgment* in an American state court." 783 F.2d at 335 (emphasis added).

that plaintiff will be made whole by protecting him against fluctuation in relative currency values.

*Id. See also Vishipco,* 660 F.2d at 866 n. 7. The *Competex* Court's holding was limited to "predict[ing] what satisfaction of judgment rule New York would apply." 783 F.2d at 339. In reaching its conclusion, however, the Court clearly relied on its view that New York's choice of the breach-day conversion rule "protects the *judgment creditor* against fluctuation in currency values to the point of allowing him to speculate without risk." *Id.* (emphasis added).[4] Such speculation is possible because a New York court applying the breach-day rule will select the conversion rate prevailing on the date of the foreign judgment. *Id.* at 335–36. Therefore, the Court rejects Irridelco's position that the conversion rates prevailing on the dates of default on its original contractual obligations are relevant.[5]

The last remaining issue involves a determination of the date on which the Swiss judgment debt "became due." *See Competex,* 783 F.2d at 335. Defendants argue that the date of the award of damages by the Cantonal Court of Vaud is controlling. Defendants' Memorandum at 18–22. Plaintiffs contend that the damage award was not enforceable during the pendency of defendants' appeal, Affidavit of Pierre Journot, sworn to on December 8, 1986, ¶ 3, and thus argue that the judgment debt first became due when the Federal Court of Switzerland affirmed the award, Plaintiffs'

Memorandum in Support of Motion for Summary Judgment at 6–7 (hereinafter referred to as "Plaintiffs' Memorandum").[6]

■ Article 53 of the CPLR, which provides for recognition of foreign country money judgments, applies to any such judgment "which is final, conclusive and enforceable where rendered even though an appeal therefrom is pending or it is subject to appeal." N.Y.Civ.Prac.L. & R. 5302 (McKinney 1978). *See Island Territory of Curacao v. Solitron Devices, Inc.,* 489 F.2d 1313, 1323 (2d Cir.1973) (application of § 5302), *cert. denied,* 416 U.S. 986, 94 S.Ct. 2389, 40 L.Ed.2d 763 (1974). It has been explained that "[t]he only stated exception [to § 5302] is where an appeal is pending or where the judgment is subject to appeal. Appeal per se does not prevent the judgment from being deemed final." D. Siegel, Practice Commentary to N.Y.Civ.Prac.L. & R. 5302 at 488 (McKinney 1978).[7] Accordingly, the Court concludes that a New York court enforcing plaintiffs' Swiss judgment would select June 12, 1985, for application of the breach-day rule, even though the judgment rendered on that date was subsequently appealed by defendants.

Plaintiffs are hereby ordered to submit within 15 days a form of judgment in conformity with this opinion.

SO ORDERED.

---

4. The Court's use of the terms "judgment debtor" and "judgment creditor" itself lends support to the view that the foreign judgment, not the defendant's underlying obligation, is primary. *See, e.g.,* 783 F.2d at 339. *See also id.* at 335 ("action on the [foreign] judgment in an American state court").

5. *Cf.* 783 F.2d at 340 ("[T]here is no sound basis for selecting a rule of *debtor's* preference.").

6. In support of their position, plaintiffs rely on Judge Werker's statement that "a judgment is an obligation which is payable, or matures, on the date of its final entry," and his selection in *Competex* of March 16, 1981, as the appropriate date. *See* Exhibit A to Plaintiffs' Memorandum, at 11. In *Competex,* however, there was no question of the effect of an appeal. Rather, an English default judgment was awarded on Sep-

tember 30, 1980, and a hearing to certify the amount of damages was held on March 16, 1981, which Judge Werker described as the "date of entry of final judgment...." *Id.* at 2–3.

7. Under § 5306, "the court may stay the [New York] proceedings until the appeal [of the foreign judgment] has been determined or until the expiration of a period of time sufficient to enable the defendant to prosecute the appeal." The purpose of starting "a New York action on the foreign judgment even though an appeal is pending in the foreign jurisdiction" may be to "set up a context for an order of attachment to seize [the judgment debtor's New York] assets and preserve them until the action is determined." Practice Commentary at 488.