**DYNAMIC CASSETTE
INTERNATIONAL LIMITED, Plaintiff,**

v.

**MIKE LOPEZ & ASSOCIATES,
INC., Defendant.**

**No. 94 CV 3696.**

United States District Court,
E.D. New York.

April 16, 1996.

Patterson, Belknap, Webb & Tyler (David W. Dykhouse, of counsel), New York City, for plaintiff.

Mike Lopez & Associates, Inc., Woodside, NY, for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

In a Report and Recommendation dated March 21, 1996, attached hereto, Magistrate Steven M. Gold recommended that plaintiff be awarded $278,488.95, as well as interest from April 4, 1995 pursuant to 28 U.S.C. § 1961.

No objections to the Report and Recommendation have been received. This court adopts the Report and Recommendation.

The Clerk of the Court is directed to enter judgment against defendants in accordance with the Report and Recommendation.

So Ordered.

## REPORT AND RECOMMENDATION

GOLD, United States Magistrate Judge:

### INTRODUCTION

Plaintiff Dynamic Cassette International Limited ("Dynamic") brings this action pursuant to Article 53 of the New York Civil Practice Law and Rules ("CPLR") seeking to enforce a foreign judgment. The judgment in issue was entered in a lawsuit brought by Dynamic in England, in which Dynamic asserted that defendant Mike Lopez and Associates, Inc. ("Lopez") breached a contract for the sale of goods. Lopez failed to appear and, on December 17, 1993, the High Court of Justice, Queen's Bench Division, of Eng-

land entered a default judgment against Lopez.

Dynamic, invoking the diversity jurisdiction of this Court pursuant to 28 U.S.C. § 1332(a)(2), now seeks enforcement of the English judgment in United States District Court. The Honorable Eugene H. Nickerson entered a default judgment in favor of Dynamic on April 4, 1995, and referred this case to me to report and recommend on the amount of damages to be awarded to plaintiff.

Plaintiff has submitted the affidavit of David W. Dykhouse dated March 31, 1995 ("Dykhouse Aff.") setting forth its position with respect to damages. By order dated April 21, 1995, I directed defendant to submit its position on damages no later than May 12, 1995. Defendant has not, however, submitted papers in opposition to plaintiff's damages request. For the reasons set forth below, I respectfully recommend that Dynamic be awarded damages in the amount of $278,313.95, as well as $175.00 in costs and disbursements.

### BACKGROUND

Plaintiff Dynamic, a limited company organized and existing under the laws of the United Kingdom, is in the business of manufacturing cassettes and other storage media. Complaint ¶ 2. Defendant Lopez, a Texas Corporation engaged in the import-export business, has its principal place of business in Dallas, Texas, as well as a place of business in Queens, New York. Complaint ¶ 3.

Defendant Lopez entered into a contract with plaintiff Dynamic for the supply of goods which provided that "the contract of sale whether verbal or written shall be governed by English Law in the jurisdiction of the High Court of Justice in England." Complaint ¶¶ 6–7, 11. In accordance with the terms of the contract, plaintiff delivered ordered goods to defendant Lopez and submitted invoices to defendant for payment. Plaintiff claims that defendant failed to pay nine of these invoices. Complaint ¶ 8.

Plaintiff, having received no payment from defendant Lopez on the nine overdue invoices, brought an action against defendant in the High Court of Justice, Queen's Bench Division, of England (the "English court"). Complaint ¶ 9. On December 17, 1993, the English Court issued a final default judgment against defendant Lopez and in favor of plaintiff in the amount of £156,935.79, together with £248.00 in costs and interest at the rate of 8% per annum from December 17, 1993 (the "English judgment"). Complaint ¶ 13. To date, no part of this judgment has been satisfied by defendant. Complaint ¶ 17.

### DISCUSSION

Once a default is entered, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. Claims for damages, however, must generally be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed. *Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir.1992), *cert. denied*, 506 U.S. 1080, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993); *Montcalm Pub Corp. v. Ryan*, 807 F.Supp. 975, 977 (S.D.N.Y.1992) (citing *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989); *Au Bon Pain Corp. v. Artect*, 653 F.2d 61, 65 (2d Cir.1981); *Deshmukh v. Cook*, 630 F.Supp 956, 959 (S.D.N.Y.1986); 6 Moore's Federal Practice ¶ 55.03[2] at 55–16 (2d ed. 1988)). Although defendant Lopez was afforded the opportunity to contest plaintiff's application for damages in this action, it has chosen not to do so.

### A. *Enforcement of the Foreign Judgment*

Plaintiff Dynamic brings this action seeking to have this Court enter judgment against Lopez in the amount of £173,350.33, the value of the English judgment (£156,-935.79, together with £248.00 in costs and £16,166.54 in interest accruing at the rate of 8% per annum from the period December 17, 1993 to March 31, 1995), plus $175.00 for costs and disbursements incurred in this action. Dykhouse Aff. ¶¶ 3, 7; *see also* Statement of Amount Due and Calculation of Interest, Dykhouse Aff. Ex. D.

Actions to enforce foreign judgments brought in federal courts pursuant to diversity jurisdiction are governed by the law of the

forum state. *In re Union Carbide Corporation Gas Plant Disaster at Bhopal,* 809 F.2d 195, 204 (2d Cir.), *cert. denied,* 484 U.S. 871, 108 S.Ct. 199, 98 L.Ed.2d 150 (1987); *Competex, S.A. v. LaBow,* 783 F.2d 333, 334 (2d Cir.1986) (citing *Vishipco Line v. Chase Manhattan Bank, N.A.,* 660 F.2d 854, 865–67 (2d Cir.1981), *cert. denied,* 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982)); *Pariente v. Scott Meredith Literary Agency, Inc.,* 771 F.Supp. 609, 615 (S.D.N.Y.1991). The substantive law of New York governing the recognition of money judgments entered by courts of foreign countries is set forth in the New York Uniform Foreign Country Money–Judgments Recognition Act, N.Y.Civ.Prac.L. & R. §§ 5301–5309 (McKinney 1978). The act provides that

> a foreign-country judgment that is final, conclusive and enforceable where rendered must be recognized and will be enforced as 'conclusive between the parties to the extent that it grants or denies recovery of a sum of money.'

*Union Carbide,* 809 F.2d at 204 (quoting CPLR § 5303).

■ A foreign judgment is generally deemed "conclusive" under New York Law unless "the judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law", or if "the foreign court did not have personal jurisdiction over the defendant." *See* CPLR § 5304. The enforcement of the judgment in this case is proper because it was rendered under a judicial system that is fair and impartial and by a court with personal jurisdiction over the defendant.

■ Plaintiff specifically alleges that England's High Court of Justice, Queen's Bench Division, is a fair and impartial tribunal. Complaint ¶ 10. Because defendant has not responded or challenged this contention, or any of plaintiff's other contentions, defendant is deemed to have admitted plaintiff's well-pleaded allegations. Moreover, the procedures followed by the courts of England have traditionally been viewed as compatible to those of the United States, and England's tribunals have been recognized as fair and impartial. *See, e.g., Colonial Bank v.*

*Worms,* 550 F.Supp. 55, 58 (S.D.N.Y.1982); *see also Ackerman v. Ackerman,* 517 F.Supp. 614, 624 (S.D.N.Y.1981) (noting that exceptions to the enforcement of foreign judgments are to be narrowly construed when the foreign court is a sister common law jurisdiction with procedures like our own), *aff'd,* 676 F.2d 898 (2d Cir.1982).

■ It further appears that the English court had personal jurisdiction over the defendant. According to the complaint, defendant Lopez was served in the English action in accordance with Texas law. Complaint ¶ 12. In addition, plaintiff asserts that defendant Lopez agreed at the time of contract that all controversies arising under the Contract would be resolved in the High Court of Justice, Queen's Bench Division, of England. Complaint ¶ 11. This contractual agreement establishes personal jurisdiction pursuant to CPLR § 5305(a)(3), which expressly provides that a foreign judgment will be not be refused recognition for lack of personal jurisdiction if "the defendant prior to the commencement of the proceedings had agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved."

For these reasons, the judgment entered in plaintiff's favor by England's High Court of Justice, Queen's Bench Division, is enforceable under New York law. Judgments of American courts, however, are generally entered in United States dollars. The only remaining question, then, is the proper exchange rate applicable to the conversion of the English judgment, rendered in British pounds, into United States dollars.

#### B. *Conversion of the Foreign Judgment*

As noted above, in a diversity action such as this one, the date on which to convert a foreign currency judgment into United States dollars is governed by New York law. New York Judiciary Law § 27(b) sets forth the proper date for converting a judgment from a foreign currency into United States dollars. Section 27(b) states, in pertinent part, that

> [i]n any case in which the cause of action is based upon an obligation denominated in a currency other than the currency of the

**12**

United States, a court shall render or enter a judgment or decree in the foreign currency of the underlying obligation. *Such judgment or decree shall be converted into the currency of the United States at the rate of exchange prevailing on the date of entry of the judgment or decree.*

N.Y.Jud.Law § 27(b) (McKinney 1987) (emphasis added).

■ Before § 27(b) was enacted, New York courts applied the breach-day conversion rule, which entitled a plaintiff to recover an amount in dollars equal to the exchange rate between dollars and the foreign currency at the time of breach. *See Competex*, 783 F.2d at 334; *Middle East Banking v. State Street Bank Int'l*, 821 F.2d 897, 902–03 (1987); *Indag, S.A. v. Irridelco Corp.*, 658 F.Supp. 763 (S.D.N.Y.1987). Section 27(b) now explicitly provides that a judgment entered in a foreign currency be converted into United States dollars at the exchange rate prevailing on the date of judgment. *See Agfa-Gevaert, A.G., v. A.B. Dick Company*, 879 F.2d 1518, 1524 (7th Cir.1989) (holding that New York Judiciary Law § 27(b) expressly requires use of the date of judgment for conversion of a foreign currency into dollars); *but see Elevator Motors Corp. v. Leistritz Aktiengesellschaft*, 1990 WL 127596, *3 (E.D.N.Y. August 21, 1990) (relying on cases decided prior to the enactment of § 27(b), the court applied the breach-day rule for conversion of a foreign debt into dollars).

The express language of Section 27(b) indicates that, when converting the English judgment in this case from pounds to dollars, the proper rate of exchange to apply is the one prevailing at the time the default judgment was entered. Although it might be argued that the "judgment or decree" referred to in Section 27(b) is the English judgment, such a reading of the statute is belied by its mandate that an American court "render or enter a judgment or decree in the foreign currency of the underlying obligation." Moreover, a brief review of the cases decided before Section 27(b) was enacted confirms that the "judgment or decree" referred to is the judgment entered in the

enforcing jurisdiction, which in this case is the United States.

As noted above, in *Competex*, decided before Section 27(b) was enacted, the Second Circuit applied the breach-day rule then in effect. The Court in *Competex* held that, where a plaintiff seeks to enforce a foreign judgment in a United States court, the breach date for purposes of converting the foreign judgment into United States dollars is the date on which the foreign judgment was entered. 783 F.2d at 334–35. The Court reasoned that the foreign judgment date constitutes the date of breach because the

American claim [is] based on the English judgment rather than on the underlying contract. [Plaintiff's] American claim ... therefore accrue[s] upon the date of entry of the English judgment....

783 F.2d at 334; *see also Indag, S.A.*, 658 F.Supp. at 764–66. As courts applying the breach-day rule have concluded that the breach occurs on the date the foreign judgment was entered, it follows that the reference to "judgment or decree" in Section 27(b), which adopts the judgment-day rule, requires payment at the exchange rate prevailing on the date judgment is entered in the enforcing jurisdiction.

Accordingly, pursuant to Section 27(b), the English judgment should be converted from pounds to dollars at the exchange rate in effect on April 4, 1995, the date on which the default judgment was entered in this case. The exchange rate on that date was £1 = $1.6055. *See* Dykhouse Aff. ¶ 8. Plaintiff is therefore entitled to judgment in the amount of $278,488.95. This amount is comprised of $278,313.95, the dollar equivalent of £173,-350.33, the total amount of the English judgment (£157,183.79 in damages together with £16,166.54 in interest), together with $175.00 in costs and disbursements related to this action.

### CONCLUSION

For the reasons stated above, I respectfully recommend that judgment be awarded in plaintiff's favor in the total amount of $278,-488.95, together with interest from April 4, 1995 pursuant to 28 U.S.C. § 1961. Any

objections to this report and recommendation must be filed with the Clerk of the Court and the chambers of the Honorable Eugene H. Nickerson within 10 days of receiving this report and recommendation, and in any event on or before April 8, 1996. Failure to file objections within the specified time waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72; *Small v. Sec. Health & Human Svcs.*, 892 F.2d 15, 16 (2d Cir.1989).